FIRST AMERICAN BANK OF
NASHVILLE, N.A., Trustee,
Plaintiff-Appellant,

v.

Frank A. WOODS, Daniel Scott, and Joe
R. Hyde, III, Defendants-Appellees—
Third-Party Plaintiffs-Appellants,

v.

ANACOMP MICROGRAPHICS, INC.,
Third-Party Defendant-Appellee.

Court of Appeals of Tennessee,
Middle Section at Nashville.

April 8, 1987.

Application for Permission to Appeal
Denied by Supreme Court
June 29, 1987
as to Frank A. Woods, Joe R.
Hyde, III, and Daniel Scott.

Hugh C. Howser, Charles C. Trabue, Jr., Trabue, Sturdivant & DeWitt, Nashville, for plaintiff-appellant.

Larry B. Woods, Woods & Woods, Nashville, for defendants-appellees—third party plaintiffs-appellants Frank A. Woods and Joe R. Hyde, III.

John F. Southworth, Jr., Ames & Southworth, Brentwood, for defendant-appellee—third party plaintiff-appellant, L. Daniel Scott.

John L. Chambers and Guy Humphries, Chambers Wyckoff & Kinnard, Nashville, for third party defendant-appellee, Anacomp Micrographics, Inc.

## OPINION

LEWIS, Judge.

Plaintiff, First American Bank of Nashville, N.A., Trustee (Trustee), has appealed

from the Chancellor's granting of defendants and third-party plaintiffs, Frank A. Woods, L. Daniel Scott, and Joe R. Hyde, III (Guarantors),[1] motion for summary judgment. The Guarantors appealed from the dismissal of their third-party complaint against third-party defendant, Anacomp Micrographics, Inc.

### THE FACTS

In early 1968, Chester B. Atkins and others owned property at 3813 Nolensville Road in Nashville, Tennessee. The Guarantors had a franchise to operate a Minnie Pearl restaurant. They approached the owners of the Nolensville Road property and asked them to build a Minnie Pearl restaurant building on the property and lease it to them for fifteen years. Mr. Atkins agreed and acquired the interests of the other owners in the property. He then transferred title to First American as Trustee for his daughter.

The Guarantors desired that the lease be between the Trustee and their corporation, Chicken System of America, Inc., (Chicken System). The Trustee agreed to lease to Chicken System if the Guarantors would personally guarantee the lease. This was agreeable, and the lease between Chicken System and the Trustee was executed on May 28, 1968.

The pertinent portions of the lease are as follows:

13. Should Lessee default in the prompt payment of any rental as and when due or in the performance of any other covenant or obligation of Lessee hereunder, or should Lessee become bankrupt or insolvent or make an assignment for creditors, Lessor shall have the right, at Lessor's option, to treat this lease as thereby terminated, and in that event Lessor may re-enter and take possession of the premises without notice or demand or legal process, but Lessee shall nevertheless be liable for all loss or damage resulting from such default. Lessor shall have the right to re-let the premises as the agent of Lessee to such parties as Lessor deems suitable, and may hold Lessee liable for any loss or damage whether suffered in re-renting, or by reason of the property remaining vacant, or for any damage done to the premises.

Failure of the Lessor to treat this lease as terminated for any failure or breach by Lessee shall not be a waiver of Lessor's right to elect to treat the lease as terminated for any subsequent or other breach by Lessee, the right being a continuing one.

20. If Lessee (a licensee of Minnie Pearl's Chicken System, Inc.) shall be in default under any provisions of this lease and Lessor desires to terminate same, or if Lessee is in default under any of the provisions of his license agreement with Minnie Pearl's Chicken System, Inc., and Minnie Pearl's Chicken System, Inc. desires to terminate said agreement, Lessor and Lessee agree that Minnie Pearl's Chicken System, Inc. shall have the right to assume said lease from Lessor upon the same terms and conditions.

24. Subject to all other terms and provisions in this lease agreement, it is understood and agreed that Lessee may sublease said property to another tenant who will sign and assume full responsibility for the remaining terms and all of the conditions of this lease, but same may be done only with the written consent of the Lessor, which shall not be unreasonably withheld. If and when Lessor's written approval is obtained, Lessee will be released from all further liability and responsibility hereunder.

The pertinent portion of the guaranty signed by each of the Guarantors is as follows:

NOW, THEREFORE, as an inducement to persuade the said First American National Bank, Trustee, to enter into said lease agreement with Chicken System of America, Inc., we, the undersigned, Frank A. Woods, L. Daniel Scott, and Joe R. Hyde, III, do hereby jointly

---

[1] Hereafter the defendants Woods, Scott and Hyde will be referred to either individually by name or collectively as Guarantors.

and severally guarantee to the said First American National Bank, Trustee, that the said Chicken System of America, Inc. will well and truly perform all of the terms, conditions and covenants of the aforementioned lease, and should it fail to do so, the undersigned will be jointly and severally liable to the said Lessor for any damage it may suffer as a result of a breach thereof by the Lessee, but only upon condition that the Lessor give written notice by registered or certified mail to each of the undersigned guarantors of any default by the Lessee at least five (5) days prior to taking any action provided for in said lease, or otherwise authorized by law. Said guarantors shall have five (5) days from the receipt of such notice within which to correct any such default.

In the fall of 1968, prior to Chicken System occupying the leased premises, Frank A. Woods and Joe R. Hyde, III, sold all of their stock in Chicken System to Wriking Foods/Beverage Systems, Inc., and ceased acting as officers and directors of Chicken System.

On April 30, 1969, Chicken System and Performance Systems, Inc., (PSI) [2] entered into an agreement whereby PSI agreed to assume responsibility for the lease. On May 1, PSI entered into possession of the leased premises.

Neither Chicken System, PSI, nor the Guarantors notified the Trustee of PSI's assumption of the responsibility of the lease. The Trustee at no time consented to PSI's assumption of the responsibility for the lease.

Subsequently, the Trustee was notified by the insurance agent who had carried insurance on the Nolensville Road property that the insurance had been cancelled and that PSI, and not Chicken System, was operating the restaurant.

On July 15, 1969, the Trustee sent five-day default notices to Chicken System and the Guarantors. That letter, in pertinent part, states:

You are advised that the lessee, Chicken System of America, Inc., has breached Sections 7 and 8 of the lease agreement, in that it has caused the insurance afforded on the subject premises to be cancelled. You are also advised that the lessee, Chicken System of America, Inc., has breached Section 24 of the lease agreement, in that it has endeavored to assign its interest under the lease to Performance Systems, Inc., without first securing the written permission of the lessor.

There may be other breaches of the lease agreement of which we are not now aware.

You are hereby given notice of the breach of this lease agreement by Chicken System of America, and as provided in your guaranty agreement, you have five (5) days within which to correct these defaults. If they are not corrected within the aforementioned term of five (5) days, then it will be necessary that further action be taken.

As I have previously advised Chicken System of America and Performance Systems, Inc., I do not see any reason why the lessor would object to an assignment of the lease, but you three gentlemen are guarantors under the lease, and we do not propose to take any action or honor any assignment that would have the effect of releasing you from your guaranty agreement.

On July 17, 1969, the Guarantors requested the Trustee to consent to the assignment of the lease from Chicken System to PSI and to release the Guarantors from their guaranty of the lease.

On July 22, 1969, the Trustee in a letter to the Guarantors refused to consent to the assignment unless the Guarantors remained as guarantors of the lease.

Frank Woods, on behalf of himself and the other Guarantors, wrote the Trustee, in pertinent part, as follows:

The purpose of this letter is to emphatically state on behalf of Chicken Systems

---

**2.** Performance Systems, Inc., is the predecessor of the third-party defendant, Anacomp Micro-graphics, Inc.

of America, Inc., and Messrs. Dan Scott, Joe R. Hyde, III, and myself that the refusal on the part of First American National Bank as Trustee to consent to the sublease or assignment of the lease for the Minnie Pearl Chicken Store at 3813 Nolensville Road is unreasonable within the meaning of Section 24 of the lease agreement.

Upon advice of counsel, I hereby advise you that Chicken Systems of America, Inc., and Messrs. Dan Scott, Joe R. Hyde, III, and myself consider such action unreasonable and will hold you liable for any damages resulting from your refusal to consent to the sublease or assignment of the lease.

On August 7, 1969, the Trustee's attorney wrote the Trustee that "in view of the prior correspondence we have had in this case, and the position taken by Messrs. Woods, Scott and Hyde, I feel that in order to protect the Trustee, suit should be instituted in the Chancery Court by way of a declaratory judgment action, to the end that the rights of the parties might be declared."

On September 30, 1969, the Trustee filed a declaratory judgment suit against Chicken System, PSI, and the Guarantors.

The November 1970 rent was not paid. The Trustee notified the Guarantors and called upon them to cure the default. On or before November 17, 1970, PSI abandoned the leased premises and wrote to the Trustee, enclosing a key to the front door, and gave the Trustee permission to enter the premises "in the interest of subleasing" the property. At that time the Trustee, PSI and the Guarantors commenced a search for a tenant.

In June 1972, the Trustee received an offer from Sir Pizza to rent the property for $600 per month. The Trustee wrote Chicken System, PSI and the Guarantors advising them that this was the best offer received, that the acceptance of the offer would not release the Guarantors, and that the Trustee would lease the property to minimize losses unless the existing default was corrected within ten days. The Trustee received no reply and, thereafter, exe-

cuted a lease with Sir Pizza. In August 1977, the Sir Pizza lease was renewed for a ten-year term. This renewed lease provided for payment to the Trustee of a minimum net rental of $1,000 per month, increasing on September 1, 1982, to $1250 per month.

## HISTORY OF THE LITIGATION

On September 30, 1969, the Trustee filed a declaratory judgment suit against Chicken System, PSI, and the Guarantors in the Chancery Court for Davidson County. (first suit)

The Guarantors, in their brief, state: "This case [the 1969 suit] raised the same issues involving the same parties as the present lawsuit." The Trustee states that "the question of whether Chicken System had breached the lease" was the question raised in the 1969 suit and there was no question raised "of whether the [Guarantors] continued to be liable under the guaranty."

■ None of the parties to this appeal have pointed to the record where a copy of the September 30, 1969, complaint can be found. It is not the duty of this Court to search the record in order to find an exhibit or find the testimony on which a party relies. *Schoen v. J.C. Bradford & Co.*, 642 S.W.2d 420, 427 (Tenn.App.1982); Rule 6(b), Rules of the Court of Appeals. While it is not our duty, we have gone through the record in an attempt to find a copy of the complaint, but have been unsuccessful.

In any event, following several letters between counsel for the Guarantors and counsel for the Trustee, the Trustee voluntarily dismissed the September 30, 1969, complaint.

Following a default of payment of rent in November 1970, counsel for the Trustee prepared to file suit against Chicken System, PSI, and the Guarantors.

On November 24, 1970, the Trustee's counsel wrote to counsel for the Guarantors, the pertinent portion of which states:

The November 1970 rent has not been paid, and accordingly, in order to comply with the provisions of the guaranty

agreement, I have instructed the Bank to give formal notice to the guarantors of the non-payment of the November rent. A copy of this formal notice is enclosed herewith.

I have been advised that you were going to get in touch with me in the hopes that some agreement might be worked out under which the lessor could pursue its remedies against the lessee and assignee without presently involving the guarantors, in such a fashion that the rights of the lessor and all of the guarantors would be preserved.

I do not know at this time just what the position of Performance Systems, Inc., is going to be. On November 17, PSI delivered a letter to the Bank along with a key to the property and indicated that it was making efforts to find an acceptable tenant. PSI also requested that the Bank make efforts to find an acceptable tenant, but reserved the right to approve or disapprove any such tenant.

Since the November rent will soon be one month in arrears, it is going to be necessary that we proceed. If you have a proposal which might form the basis of an agreement between the lessor and the guarantors, I would appreciate very much your contacting me immediately so that we will know how to proceed and against whom.

The Guarantors' counsel then prepared a waiver agreement and forwarded it to the Trustee's counsel, along with the following cover letter.

I have prepared a short letter that seems to me to take care of this situation. If you approve of it, I will get it signed by Dan Scott, Frank Woods, and submit it to Mr. Hyde's attorney in Memphis. I am of the opinion and belief that Joe R. Hyde, III, will also sign it.

On December 22, 1970, the Trustee's counsel approved and returned the waiver, which was executed by the Guarantors and returned to the Trustee on January 11, 1971. The waiver is as follows:

With respect to the lease by and between the First American National Bank, Trustee, and the Chicken Systems of America, Inc., dated the 28th day of May, 1968, as amended, which was subsequently assigned to Performance Systems, Inc., we, the undersigned, in consideration of the agreement of the First American National Bank as Trustee, at our request, to exhaust the lessor's remedy against Performance Systems, Inc., and Chicken Systems of America, Inc., agree and understand that the Bank by following such course, will not waive or prejudice any and all rights that it may have or will have as lessor against us, or any of us, pursuant to a guaranty agreement dated the 28th day of May, 1968, and signed by us. This agreement is made by us without prejudice to, and without waiving, our position and contention that under the facts and circumstances we are not liable under the guaranty.

On June 22, 1971, the Trustee brought suit against PSI and Chicken System. (second suit). Following the entry of a final decree in the Chancery Court, an appeal was taken to the Supreme Court, which affirmed the Chancellor's holding that the assignment of the lease by Chicken System to PSI was invalid since the Trustee had not consented. However, PSI, having participated in the assignment and accepted and occupied the premises, was estopped from asserting the invalidity. *First American National Bank, Trustee, v. Chicken System of America, Inc.*, 510 S.W.2d 906 (Tenn.1974). The case was remanded for a determination of the amount of recovery.

On remand, the principal amount was stipulated and paid by PSI. However, PSI appealed from the Chancellor's awarding interest from the date when interest, taxes and insurance were due. The Supreme Court affirmed. *Performance Systems, Inc., v. First American National Bank, Trustee,* 554 S.W.2d 616 (Tenn. 1977).

On August 18, 1976, while the second suit was pending, the Trustee filed a declaratory judgment suit against PSI, Chicken System, and the Guarantors. (third suit)

Prior to filing this suit, the Trustee received the following letter from Frank A. Woods.

> In confirmation of our telephone conversation of today I would like to state that in the event that there would be any future litigation against myself that I would not plead any aspect of the statute of limitations with respect to the agreement which we had with First American pertaining to the fact that First American would exhaust its remedies against Performance Systems, Inc., before pursuing any alleged claim against myself, Dan Scott, and Pit Hyde. By copy of this letter, I shall inform Dan and Pit of the request which you have made for a statement with respect to the statute of limitations and unless you hear differently from one of them you may include them within the scope of the statute of limitations waiver.

By an updated, signed notation at the bottom of a copy of this letter, J.R. Hyde agreed to be bound.

This August 18, 1976, suit sought a declaration of the rights and liabilities of the parties regarding the difference in the payment of rents under the original lease and the rents paid by Sir Pizza.

In July 1979, while the suit was pending, each of the Guarantors signed the following agreement:

> We further agree that such delay in proceeding against us as may be occasioned by said non-suit and said exhaustion of remedies against Performance Systems, Inc., and Chicken Systems of America, Inc., will not be used by us to raise a defense of laches, estoppel, or otherwise, and that all rights that First American National Bank, Trustee, may have or will have as lessor against us, or any of us, pursuant to a guaranty agreement dated the 28th day of May, 1968, and signed by us will not be adversely affected by said non-suit or said delay. This agreement is made by us without prejudice to, and without waiving, our contention that we are not liable under the guaranty.

The Trustee then took a non-suit as to the Guarantors and proceeded against PSI and Chicken System. A default was entered against Chicken System, and the case went to trial against PSI. The Chancellor awarded recovery against PSI, holding that it was primarily liable for the rent and Chicken System was secondarily liable.

On appeal, this Court reversed, holding that as between PSI and the Trustee, PSI had not assumed the lease. Therefore, there was not "privity of contract" but only "privity of estate" between PSI and the Trustee, that when the Trustee leased the premises to Sir Pizza, PSI's right to occupy the premises was terminated and "privity of estate" between the Trustee and PSI ceased to exist. The suit as to PSI was dismissed and the case remanded for further proceedings against Chicken System. *First American National Bank, Trustee, v. Chicken System of America, Inc.*, 616 S.W.2d 156, 162 (Tenn.App.1980).

The charter of Chicken System had been revoked and there were no assets to satisfy the judgment. Hence, the present suit was filed against the Guarantors.

On May 18, 1982, the Trustee filed this suit against the Guarantors seeking a judgment under the guaranty for the "difference between the sum due and owing under the May 28, 1968, lease agreement, including reasonable attorney's fees and expenses and those amounts received from the sublease with Sir Pizza of Madison" and for prejudgment interest and costs.

The Guarantors answered in the spring of 1983, and, in April 1984, filed a third-party complaint against Anacomp Micrographics, Inc. (Anacomp). They alleged that Anacomp, as the successor to PSI, assumed PSI's obligations and responsibilities under the lease and "is primarily obligated for the performance of those obligations, and, in equity, is bound to indemnify the [Guarantors] for any loss as occasioned by the [Guarantors] by Anacomp Micrographics, Inc.'s, failure to perform the aforementioned obligations."

In its answer, Anacomp pleaded, *inter alia*, that PSI as a matter of law did not assume the lease between Chicken System

and the Trustee and that, as the successor to PSI, it was not liable.

In February 1986, the Guarantors filed a motion to amend their answer to be allowed to plead that the Trustee's claim was barred by the statute of limitations "in that the breach of the lease occurred in 1969 and this action to enforce the guaranty on that lease was commenced in 1982." This motion was granted.

Subsequently, all parties filed motions for summary judgment. Following a hearing in July 1986, the Chancellor sustained Anacomp's motion after finding as a matter of law "that [Anacomp] did not assume the lease between [the Trustee] and Chicken System of America, Inc.," and dismissed the third-party complaint.

The court, in granting the Guarantors' motion for summary judgment, stated as follows:

> This matter was further heard on July 8 and 9, 1986, upon (a) the motion of the plaintiff for summary judgment; (b) the motion for judgment on the pleadings, or in the alternative, motion for summary judgment on behalf of defendants, Frank A. Woods and Joe R. Hyde, III; and (c) the motion to dismiss; or in the alternative motion for judgment on the pleadings; or in the alternative motion for summary judgment on behalf of the defendant L. Daniel Scott. The Court, after a review of the entire record, including the briefs of the parties and cases cited therein, is of the opinion and finds that the complaint was brought to enforce a guaranty agreement dated April 27, 1968, executed by the defendants, and that the cause of action arose upon the repudiation of that guaranty agreement. The defendants' repudiation of the guaranty agreement was acknowledged on August 27, 1969, in a letter from the plaintiff's counsel to the defendants and others. In that letter, the plaintiff acknowledged that the defendants had repudiated their guaranty agreement. Thus, the Court was of the opinion and finds that the six (6) year statute of limitations began to run on the cause of action against the defendants on

August 27, 1969. Initially, suit was filed by the plaintiff against the defendants on September 30, 1969, in the Chancery Court for Davidson County, Tennessee under Rule Docket No. 92545, which suit sought to enforce the guaranty and attached thereto as an exhibit was the letter of August 27, 1969, from the plaintiff's attorney to the defendants and others. That suit was dismissed without prejudice on January 12, 1970. The Court finds that the plaintiff did not reinstitute suit against the defendants on the guaranty until August 18, 1976, more than six (6) years after accrual of the cause of action and after the statute of limitations had run.

> The Court was further of the opinion and finds that an undated letter executed by the defendants, Frank A. Woods, Joe R. Hyde, III, and L. Daniel Scott, in January, 1971, had no effect on the running of the statute of limitations as to the cause of action. The Court was of the opinion and finds that a letter dated February 10, 1976, signed only by the defendants Frank A. Woods and Joe R. Hyde, III, could have no effect on tolling the statute of limitations, as it was executed after the statute of limitations had run and did not indicate that it was to have retroactive effect. The Court is of the opinion and finds that the instant suit is barred by the statute of limitations and as a matter of law, there is no genuine issue of material fact or justicible issue. The defendants are thus entitled to a judgment of dismissal with prejudice. All remaining costs not previously taxed are to be taxed to the plaintiff, for which execution may issue.

## ISSUES

The Trustee has presented four issues. We find it necessary to discuss only two of those. They are: "Whether defendants waived the statute of limitations in a letter executed in January of 1971," and "[w]hether the plaintiff is entitled as a matter of law to a judgment on defendants' guaranty agreement."

The Guarantors have presented one issue, whether the trial court erred in granting summary judgment to Anacomp as the successor to PSI.

We first discuss the Trustee's issues.

For the purpose of this opinion only, we will assume that the Chancellor's finding that the Guarantors had a right to, and did, repudiate their guaranty of the lease not later than August 27, 1969, is correct.

However, even assuming the foregoing, we hold that the Chancellor erred in finding that the statute of limitations had run.

This suit is governed by Tenn.Code Ann. § 28–3–109(a)(3), since it is a suit to enforce a contract of guaranty. Suits under Tenn. Code Ann. § 28–3–109(a)(3) must be brought within six years.

The Trustee brought suit on September 30, 1969, against the Guarantors, Chicken System and PSI. On January 12, 1970, the Trustee took a voluntary nonsuit as to all parties.

The Guarantors Woods and Hyde contend that once suit is filed and a nonsuit is taken, Tenn.Code Ann. § 28–1–105 comes into play. In other words, they argue that once a nonsuit is taken, suit must be refiled within one year pursuant to Tenn.Code Ann. § 28–1–105 notwithstanding the statute of limitations. In this case, the Trustee's cause of action accrued on August 27, 1969, and a six-year statute of limitations applied. The Guarantors insist that since the second suit was not filed until June, 1971, the statute of limitations had run.

They have cited cases in support of this argument. However, those cases are inapposite to the facts of this case.

■ The case controlling the facts of this case is *Dushan v. Metropolitan Life Insurance Co.,* 14 Tenn.App. 422, 431 (1931), which states: "The statute [Tenn. Code Ann. § 28–1–105] with respect to bringing a new suit within one year after nonsuit, does not apply where the cause of action is not barred by the Statute of Limitations."

Therefore, if a new suit is commenced within the period of the statute of limitations or if there is a valid waiver of the statute of limitations within the period, the new suit will not be dismissed on the ground that the statute of limitations has run.

The parties agree that the statute of limitations may be waived. In *Jackson v. Kemp,* 211 Tenn. 438, 443, 365 S.W.2d 437, 439 (1963), our Supreme Court stated:

Of course, it is a well recognized legal principle that the statute of limitations is for the benefit of individuals, and not to secure general objects of policy; hence a statute of limitations may be waived by express contract or by necessary implications, or its benefits may be lost by conduct invoking the established principles of estoppel *in pais.* Such was applied by this Court in a Workmen's Compensation case, *Hartford Accident and Indemnity Co. v. Hay,* 159 Tenn. 202, 17 S.W.2d 904 [1929].

The question here is: did the January 11, 1971, letter sent to the Trustee by the Guarantors waive the statute of limitations. The pertinent portion of that letter states:

With respect to the lease by and between the First American National Bank, Trustee, and the Chicken Systems of America, Inc., dated the 28th of May, 1968, as amended, which was subsequently assigned to Performance Systems, Inc., we, the undersigned, in consideration of the agreement of the First American National Bank as Trustee, at our request, to exhaust the lessor's remedy against Performance Systems, Inc., and Chicken Systems of America, Inc., agree and understand that the bank by following such course, will not waive or prejudice any and all rights that it may have or will have as lessor against us, or any of us, pursuant to a guaranty agreement dated the 28th day of May, 1968, and signed by us. This agreement is made by us without prejudice to, and without waiving, our position and contention that under the facts and circumstances we are not liable under the guaranty.

This letter does not in specific language waive the statute of limitations, that is, it does not state "we waive the statute of limitations." However, we are of the opinion that such language is not necessary. The Supreme Court, in *Jackson v. Kemp*, held that where a claims adjuster had told the plaintiff that if he would not employ an attorney but would deal directly with the adjuster, he would have the company pay the plaintiff's hospital bills and medical bills and, as soon as his injuries were determined, would pay the plaintiff, the adjuster's statement and the forbearance of the plaintiff were sufficient to waive the statute. 211 Tenn. at 442, 365 S.W.2d at 438–439.

■ We are of the opinion that the language used in the January 11, 1971, letter, by necessary implication, waives the statute of limitations. The Guarantors agreed that if the Trustee would exhaust its remedies against PSI and Chicken System before filing suit against them on their guaranty, the Trustee would "not waive or prejudice any and all rights that it may have or will have as lessor against us...."

The principal right that the Trustee had was to collect from the Guarantors under the guaranty in the event it was unable to collect from PSI or Chicken System. The Guarantors, in exchange for the Trustee' forbearance in filing suit against them, agreed that the Trustee would not waive or prejudice its rights against the Guarantors.

The January 11, 1971, letter waived the Guarantors' right to plead the statute of limitations as a defense.

■ Guarantor Scott argues that the last sentence of the January 11, 1971, letter shows "clearly" that the Guarantors specifically reserved the defense of the statute of limitations. The sentence states: "This agreement is made by us without prejudice to, and without waiving, our position and contention that under the facts and circumstances we are not liable under the guaranty." We have read and reread numerous times the January 11, 1971, "waiver" and are unable to read into it a showing of any kind that the Guarantors reserved the defense of the statute of limitations.

The Guarantors, in their letter of "repudiation," took the position that the Trustee unreasonably withheld consent to sublease and, because of that unreasonable withholding, they were relieved of their obligations under the guaranty. They did not waive that defense or any other defense they might have in a suit on the guaranty. However, the January 11, 1971, "waiver" was an effective waiver of the statute of limitations.

In view of our holding that the January 1971 waiver effectively waived the statute of limitations, we deem it unnecessary to discuss the 1976 waiver.

Woods and Hyde also argue that even if there was a waiver of the statute of limitations, the Trustee's "claim is barred by the doctrine of laches, since [the Trustee] has long neglected or omitted to assert its claim." Woods and Hyde complain that in the late 1960's and early 1970's the Trustee chose to deal with PSI rather than with them and since that time until this suit was filed in 1982, the Trustee has failed to assert any rights with respect to them.

This argument is wholly without merit.

The Trustee, through its counsel, carried on extensive correspondence with the Guarantors' counsel during 1969. In September 1969, the Trustee filed a declaratory judgment suit against the Guarantors, as well as against PSI and Chicken System. This suit was dismissed after correspondence between counsel for the parties.

In late 1970, the Trustee was preparing to sue the Guarantors along with PSI and Chicken System when, at the "request" of the Guarantors, the Trustee agreed to exhaust its remedies against PSI and Chicken System before proceeding against the Guarantors.

The Trustee, in June 1971, sued PSI and Chicken System but, pursuant to the January 11, 1971, "request" of the Guarantors, did not include them in the suit.

The 1971 suit was not completed until 1977. In August 1976, while the 1971 suit was still pending, the Trustee sued PSI, Chicken System and the Guarantors. The

Guarantors then executed another waiver agreeing that if the Trustee would dismiss the suit against them and exhaust its remedies against PSI and Chicken System, such action would not preduice the Trustee's rights against the Guarantors. A nonsuit was taken as to them.

The August 1976 suit then went to trial and, after an appeal to this Court, certiorari was denied by the Supreme Court on May 4, 1981. The Trustee had exhausted its remedies against Chicken System and PSI at that point.

This suit was then filed on May 19, 1982.

Except for the time between November 1, 1970, when the nonsuit was taken in the first suit, and June 22, 1971, when the second suit was filed, and between May 4, 1981, when certiorari was denied by the Supreme Court, and May 19, 1982, when this suit was filed, the Trustee has been constantly litigating this matter with PSI and Chicken System. The Guarantors were not a party to this litigation at their request.

■ Laches is neglect or omission to assert a right which, taken in conjunction with the lapse of time, causes prejudice to the adverse party. *Harmon v. Eggers,* 699 S.W.2d 159, 161 (Tenn.App.1985). The omission to bring suit against the Guarantors at an earlier time was brought about at the Guarantors' request and not through neglect on the part of the Trustee. If the Guarantors have been prejudiced by the lapse of time, it has been because of their requests. The Trustee's claim is not barred by laches.

The Trustee also insists that the Chancellor erred in failing to grant its motion for summary judgment. It requests that this Court do so because it "is entitled as a matter of law to a judgment on the guaranty in the amount of $89,599.74, reserving for the Trial Court only the determination of the amount of attorney's fees."

■ This Court has authority to enter such decree as the law and the evidence warrants where it found that the trial court has failed to do so. *Thornbird v. Chase,* 606 S.W.2d 672, 675 (Tenn.App.1980). Gen-

erally, denial of a motion for summary judgment is not appealable, *In re Estate of McCord,* 661 S.W.2d 890, 891 (Tenn.App. 1983); however, this Court does have the authority to grant a motion for summary judgment when the matter is properly before the Court. Here, however, the Chancellor correctly denied the Trustee's motion.

■ Section 24 of the lease provides that the lessor Trustee will not unreasonably withhold its consent to a sublease. If that consent is unreasonably withheld then the lessee will be released from all further liability. If the lessee is released from all liability, then the Guarantors are likewise released. Each of the Guarantors has raised the factual issue of whether or not the Trustee unreasonably withheld its consent to the sublease to PSI. This is a disputed question of fact. Summary judgment is not appropriate on this issue.

The Guarantors present the issue of "[w]hether the Trial Court erred in granting summary judgment to Anacomp Micrographics, Inc."

The theory upon which the Guarantors base their claim against Anacomp (hereafter PSI–Anacomp) is indemnification.

■ This is a contract action and, in a contract action, there must be a clear and unequivocal expression of an intention to indemnify. *Union Carbide Corp. v. Dunn Brothers,* 294 F.Supp. 704, 707 (M.D.Tenn. 1968); *Kroger Co. v. Giem,* 215 Tenn. 459, 472, 387 S.W.2d 620, 626 (1964). There is no evidence in this record of a clear expression of an intention by PSI–Anacomp to indemnify the Guarantors.

■ Where there is a direct contractual relationship, there may be an implicit right of indemnification arising out of an obligation to indemnify for negligent conduct in the performance of the contract. *Lusk v. Jim Walter Homes,* 648 S.W.2d 935, 939 (Tenn.1983).

■ There is no evidence in this record of a contractual relationship between PSI–Anacomp and the Guarantors, and the

Guarantors do not contend that there is. Therefore *Lusk* is not applicable.

■ The Guarantors, in their reply brief, contend that they are third-party beneficiaries to the contract between Chicken System and PSI–Anacomp.

In contracts there are essentially three types of third-party beneficiaries. First, where the performance of a promise will constitute a gift to the beneficiary; the beneficiary is a donee beneficiary. Second, if no purpose to make a gift appears from the terms of the contract and the performance of it will satisfy an actual or supposed asserted duty of the promissee to the beneficiary; the beneficiary is a creditor beneficiary. Third, in all other cases the beneficiary is deemed to be an incidental beneficiary.

. . . .

An incidental beneficiary acquires no rights against the promissor or the promissee by virtue of the contract.

*Willard v. Claborn*, 220 Tenn. 501, 505–506, 419 S.W.2d 168, 170 (1967) (citations omitted).

We find nothing in this record which would support a finding that the Guarantors are donee beneficiaries. Likewise, there is nothing in the record to show that the terms of the contract between PSI–Anacomp and Chicken System would satisfy an actual or supposed asserted duty of PSI–Anacomp to the Guarantors.

■ While we are of the opinion that the Guarantors are not third-party beneficiaries under the agreement of PSI–Anacomp and Chicken System, even if they were, they were no more than incidental beneficiaries and therefore acquired no rights against PSI–Anacomp.

■ The Chancellor correctly found that as a matter of law Anacomp, as the successor to PSI, did not assume the lease between the Trustee and Chicken System, that there was no privity of contract between the Trustee and PSI–Anacomp so as to render PSI–Anacomp responsible for contractual obligations "other than those obligations flowing from privity of estate, which terminated in 1972" and that there was no privity of contract between the Guarantors and PSI–Anacomp on which indemnification could be established.

In *First American National Bank v. Chicken System of America, Inc.,* 510 S.W.2d 906, 909 (Tenn.1974), the Court held that as to the Trustee, PSI–Anacomp was estopped from asserting that the assignment between it and Chicken System was invalid, since PSI had taken possession of the leased premises. Nevertheless, the Court held that the lease had not been validly assigned.

This Court, in *First American National Bank v. Chicken System of America, Inc.,* 616 S.W.2d 156, 162 (Tenn.App.1980), held that there was "privity of estate" but that terminated on September 1, 1972, when the Trustee leased the Nolensville Road property to Sir Pizza and that there was never privity of contract between PSI–Anacomp and the Trustee.

The Chancellor correctly granted the third-party defendant's motion for summary judgment.

The judgment of the Chancellor in granting the third-party defendant, Anacomp Micrographics, Inc.'s, motion for summary judgment is affirmed. His judgment in denying the plaintiff, First American Bank of Nashville, N.A., Trustee's motion for summary judgment is affirmed. His judgment in granting the defendants, Frank A. Woods, Daniel Scott, and Joe R. Hyde, III's, motion for summary judgment is reversed and the cause remanded to the Chancery Court for the collection of costs, which are assessed against defendants/third-party plaintiffs, and for further necessary proceedings.

CANTRELL, J., and LLOYD TATUM, Special Judge, concur.