IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
September 11, 2018 Session

HARTFORD CASUALTY INSURANCE COMPANY v. COMANCHE
CONSTRUCTION INC. ET AL. v. ANDREA BLACKWELL ET AL.

Appeal from the Chancery Court for Dyer County
No. 14-CV-319        Robert E. Lee Davies, Senior Judge

_____

No. W2017-02118-COA-R9-CV

_____

This case involves a dispute between workers' compensation insurance carriers concerning liability for benefits paid to an injured employee. The plaintiff filed a declaratory judgment action seeking indemnity for benefits voluntarily paid to the employee on the theory that the employee was actually a loaned servant, which shifted liability to the defendant borrowing employer. The defendant filed a motion for summary judgment asserting that the undisputed facts could not establish a claim for implied indemnity. We granted this Rule 9 interlocutory appeal to consider whether the trial court improperly denied the motion. After our thorough review, we affirm the trial court's decision to deny the motion for summary judgment and remand for further proceedings.

**Tenn. R. App. P. 9 Interlocutory Appeal; Judgment of the Chancery Court Affirmed**

BRANDON O. GIBSON, J., delivered the opinion of the court, in which J. STEVEN STAFFORD, P.J., W.S., and THOMAS R. FRIERSON, II, J., joined.

John E. Anderson, Sr., and Autumn L. Gentry, Nashville, Tennessee, for the appellants, Comanche Construction, Inc., Comanche Construction of Georgia, Inc., and Seabright Insurance Company.

Jason K. Murrie, and Peter C. Robison, Nashville, Tennessee, for the appellee, Hartford Casualty Insurance Company.

# OPINION

## I. FACTS & PROCEDURAL HISTORY

In 2009, Comanche Construction, Inc. ("Comanche") was hired to make repairs to a bridge in Dyersburg, Tennessee, that crosses over the Mississippi River. A crane was needed to complete the repairs, so Comanche rented a crane and crane operator from Ford Construction Company ("Ford"). There was no written agreement between Comanche and Ford. Instead, there was a verbal agreement to rent the crane and crane operator at an hourly rate. The crane operator selected by Ford was Robert Blackwell.

On May 7, 2009, Mr. Blackwell was operating the crane when the crane tipped and fell over the side of the bridge. He jumped out and onto the bridge, sustaining a serious head injury that was ultimately fatal. Thereafter, Ford's workers' compensation insurance carrier, Hartford Casualty Insurance Company ("Hartford"), voluntarily paid workers' compensation benefits to and/or on behalf of Mr. Blackwell.

Mr. Blackwell's conservators ("the Blackwells") filed a tort action against Comanche in the Circuit Court for Dyer County, Tennessee, seeking damages for Mr. Blackwell's injuries. Because Hartford had voluntarily paid workers' compensation benefits, it filed a motion to intervene in the tort action to protect its subrogation lien. Therein, Hartford asserted that Mr. Blackwell was an employee of Ford.

Hartford then proceeded to file the present declaratory judgment action in the Chancery Court for Dyer County, Tennessee, on July 31, 2014, seeking indemnification from Comanche and its workers' compensation insurer[1] for all workers' compensation benefits voluntarily paid to Mr. Blackwell.[2] Hartford reasoned that it should recover the benefits paid because, at the time of the injury, Mr. Blackwell was working as a "borrowed employee" or loaned servant of Comanche, as he was under Comanche's direction and control.

Thereafter, on August 22, 2014, Comanche settled the Blackwells' tort claims in

---

[1] Hartford named as defendants Comanche Construction, Inc., Comanche Construction Inc. of Georgia, and Seabright Insurance Company, which is Comanche's workers' compensation insurance carrier. For the sake of clarity, we will continue referring to these defendants as "Comanche," as did the trial court.

[2] Comanche removed the case to federal court on the basis of diversity of citizenship and the amount in controversy exceeding $75,000. However, the United States District Court for the Western District of Tennessee declined to exercise the district court's discretionary jurisdiction and remanded the case back to the Dyer County Chancery Court.

circuit court for an undisclosed sum, and as a part of the settlement, Hartford acknowledged the "complete satisfaction of its subrogation lien," in exchange for a portion of the settlement funds paid to the Blackwells. The settlement agreement, however, specifically provided that its terms did not apply to the declaratory judgment action filed by Hartford in chancery court.[3]

On December 19, 2016, Comanche filed a motion for summary judgment in the declaratory judgment action in chancery court asserting therein that "the undisputed facts establish that [Hartford's] evidence is insufficient to establish that it is entitled to indemnification from [Comanche]."[4] Alternatively, Comanche argued that it was entitled to summary judgment because Hartford's claim was actually one for subrogation, which was barred by the passing of the one-year statute of limitations.

The trial court heard arguments on the motion, and by order entered September 18, 2017, it denied Comanche's motion for summary judgment. The court determined that the action was in fact one for indemnity rather than for subrogation. It found that, viewing the facts in Hartford's favor, Hartford had made a prima facie showing that Comanche borrowed Ford's employee, Mr. Blackwell, for a particular purpose and exercised control over him to the extent that he became the *de facto* employee of Comanche. Although all agreed that there was no express contract for indemnity between the parties, the court found that there was a direct contractual relationship between Ford and Comanche and that implicit within the relationship was the obligation of Comanche to indemnify Ford under the Workers' Compensation Act for injuries to Blackwell if caused by Comanche's negligence in directing the operation of the crane.

Comanche filed a timely motion for permission to seek an interlocutory appeal and

---

[3] Specifically, this portion of the agreement, which was signed by Hartford's counsel, provided:

> Notwithstanding anything herein to the contrary, The Hartford Casualty Insurance Company, by the signature of its authorized representative hereinbelow, only acknowledges complete satisfaction of its subrogation lien . . . . It is further understood and agreed that neither the satisfaction of said lien nor anything in this document shall operate to in any way prejudice the Complaint seeking declaratory relief filed by Hartford Casualty Insurance Company against Comanche Construction, Inc., . . . on July 31, 2014 under docket number 14-CV-319 or any of the claims made and asserted therein, whether in that forum or in any other.

[4] The motion for summary judgment was filed against Hartford and alternatively against the Blackwell estate. On May 3, 2016, Comanche filed a sealed third-party complaint against the Blackwells seeking indemnification pursuant to the terms of the settlement agreement reached in the tort action. The chancery court bifurcated the original action by Hartford from the third-party action of Comanche against the Blackwells. Thus, only the motion for summary judgment against Hartford is at issue.

3

to stay the proceedings. The trial court granted the motion, and this Court granted Comanche's Rule 9 application.

## II. STANDARD OF REVIEW

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Tenn. R. Civ. P. 56.04. The party moving for summary judgment may satisfy its burden of production by (1) affirmatively negating an essential element of the nonmoving party's claim or (2) demonstrating that the nonmoving party's evidence at the summary judgment stage is insufficient to establish its claim. *Rye v. Women's Care Ctr. of Memphis, MPLLC*, 477 S.W.3d 235, 264 (Tenn. 2015). When a motion for summary judgment is properly supported, the nonmoving party, in order to survive summary judgment, may not rest upon the mere allegations or denials of its pleading but must respond, and by affidavits or one of the other means provided in Rule 56, set forth specific facts showing that there is a genuine issue for trial. *Id.* at 265. "The nonmoving party must demonstrate the existence of specific facts in the record which could lead a rational trier of fact to find in favor of the nonmoving party." *Id.* "[S]ummary judgment should be granted if the nonmoving party's evidence *at the summary judgment stage* is insufficient to establish the existence of a genuine issue of material fact for trial." *Id.* (citing Tenn. R. Civ. P. 56.04, 56.06). Appellate courts review the grant or denial of a motion for summary judgment de novo with no presumption of correctness. *Id.* at 250.

## III. ANALYSIS

The issue before us on appeal is whether the trial court erred in denying Comanche's motion for summary judgment.

"The right to indemnity rests upon the principle that everyone is responsible for the consequences of his own wrong, and, if another person has been compelled to pay the damages which the wrongdoer should have paid, the latter becomes liable to the former." *S. Coal & Coke Co. v. Beech Grove Min. Co.*, 381 S.W.2d 299, 302 (Tenn. Ct. App. 1963). This Court discussed express and implied indemnification in *Winter v. Smith*:

> Indemnity obligations are either express or implied. Express indemnity obligations arise from the contracts between the parties, and implied indemnity obligations, whether called equitable or contractual, are imposed by law without the consent or agreement of the parties. Courts will impose an implied obligation to indemnify when the obligation is a

4

necessary element of the parties' relationship, *Lusk v. Jim Walter Homes, Inc.,* 648 S.W.2d 935, 939 (Tenn.1983); *Houseboating Corp. v. Marshall,* 553 S.W.2d [588, 589 (Tenn. 1977)], or when justice and fairness demand that the burden of paying for the loss be shifted to the party whose fault or responsibility is qualitatively different from the other parties. *Velsicol Chem. Corp. v. Rowe,* 543 S.W.2d 337, 339 (Tenn.1976); *see also Hydro–Air Equip., Inc. v. Hyatt Corp.,* 852 F.2d 403, 406 (9th Cir.1988); *Facilities Dev. Corp. v. Miletta,* 180 A.D.2d 97, 584 N.Y.S.2d 491, 495 (1992). In the absence of an express contract, an obligation to indemnify will be implied only if the party from who indemnification is sought breached a contract or engaged in some other related tortious conduct. *Burkert v. Petrol Plus of Naugatuck, Inc.,* 216 Conn. 65, 579 A.2d 26, 31 (1990); *First Am. Bank v. Woods,* 734 S.W.2d 622, 632 (Tenn.Ct.App.1987) (implied contractual indemnity based on negligence); *Stiver Mktg., Inc. v. Performance Business Forms, Inc.,* App. No. 01–A–01–9108–CH–00276, slip op. at 7, 16 T.A.M. 52–7, 1991 WL 254564 (Tenn. Ct. App. Dec. 4, 1991) (No Tenn. R. App. P. 11 appl. filed).

914 S.W.2d 527, 541-42 (Tenn. Ct. App. 1995).

Although the *Winter* case discussed the concept of indemnification in the context of construction litigation, the Tennessee Supreme Court has considered the issue in a case—not unlike the subject claim—involving the payment of workers' compensation benefits. In *Travelers Ins. Co. v. Fidelity & Cas. Co. of New York,* the supreme court considered an indemnity claim brought by Travelers, the workers' compensation insurance carrier of a contractor, against Fidelity, the insurer of a subcontractor. 409 S.W.2d 175, 176 (Tenn. 1966). Travelers had paid workers' compensation benefits to an injured employee of the general contractor but alleged that the employee was a loaned servant of the subcontractor at the time of the injury. *Id.* at 177. According to Travelers, the work being done at the time of the injury was that of the subcontractor, and the subcontractor had the right to control the details of the employee's work. *Id.* Fidelity sought to have the case dismissed based on the undisputed fact that the case had been filed after the one-year statute of limitations for subrogation claims had run. *Id.*

The supreme court reversed the trial court's dismissal of the case. *Id.* at 179. It concluded that the claim was one for indemnity, not for subrogation, and that the one-year statute of limitations did not apply. *Id.* at 179. The court noted that Tennessee's workers' compensation laws "do[] not determine, as between contractors and subcontractors, who is primarily liable as that determination must be made on equitable principles." *Id.* at 178. It further concluded that "[w]hether Travelers or Fidelity was primarily liable to [the employee] . . . is a question of fact," depending "upon in whose

work he was engaged at the time of his injury." *Id.*

Likewise, in the case before us, Hartford has claimed that although Mr. Blackwell was employed by Ford at the time of his accident, he was a loaned servant under the direction and control of Comanche. Hartford cites *Winchester v. Seay*, in which our supreme court held that a "special employer" becomes liable for workers' compensation to an employee loaned from a "general employer" if:

> (a) The employee has made a contract of hire, express or implied, with the special employer;

> (b) The work being done is essentially that of the special employer; and

> (c) The special employer has the right to control the details of the work.

*Winchester v. Seay*, 409 S.W.2d 378, 381 (Tenn. 1966); *see also Catlett v. Indem. Ins. Co. of N. Am.*, 813 S.W.2d 411, 414-16 (Tenn. 1991).

Comanche argues on appeal, as it did before the trial court, that we need not consider the loaned servant issue because, pursuant to *Winter v. Smith*, Hartford's proof is insufficient as a matter of law to establish its claim for indemnification. For this point, Comanche relies almost exclusively on the last sentence of the above-quoted portion of the *Winter* opinion that "an obligation to indemnify will be implied only if the party from who indemnification is sought *breached a contract or engaged in some other related tortious conduct*." *Winter*, 914 S.W.2d at 542 (emphasis added). Comanche asserts that based on this, implied indemnity cannot be imposed because Hartford has not alleged that Comanche breached a contract or engaged in tortious conduct.

In denying Comanche's motion for summary judgment, the trial court emphasized that the same court, in *Winter*, stated that "[c]ourts will impose an implied obligation to indemnify when the obligation is *a necessary element of the parties' relationship*." *Winter*, 914 S.W.2d at 542. The trial court found that Hartford produced sufficient evidence, when viewed in the light most favorable to Hartford at the summary judgment stage, to show that "Comanche borrowed Ford's employee, Blackwell," and that "implicit within this relationship was the obligation of Comanche to indemnify Ford under the Workers' Compensation Act for injuries to Blackwell if they were caused by the negligence of Comanche while it directed the operation of the crane in question." The trial court, citing *Travelers*, explained:

> While the policy behind our Workers' Compensation Act is to ensure compensation for an injured worker regardless of his or her negligence, the

6

statute does contemplate indemnification among principal and intermediate contractors, subcontractors and the immediate employer, and our Supreme Court has indicated that any immediate employer may file an action for indemnification against the party who was controlling the details of the work being performed by the employee at the time of his injuries.

After reviewing the controlling law, we are inclined agree with the trial court's interpretation of the *Winter* case. Although Comanche makes much of the statement in *Winter* that "an obligation to indemnify will be implied only if the party from who indemnification is sought *breached a contract or engaged in some other related tortious conduct*," we cannot ignore the preceding statement that "[c]ourts will impose an implied obligation to indemnify when the obligation is *a necessary element of the parties' relationship*." *Winter*, 914 S.W.2d at 542 (emphasis added). As explained above, *Winter* involved construction litigation. It is evident that the court of appeals was not contemplating a dispute involving no-fault workers' compensation benefits, nor was it considering a dispute settled by agreement without a determination of liability, as is the case here. Moreover, our supreme court indicated in *Travelers* that such indemnification claims by a general employer against another employer borrowing an employee are permissible in the context of workers' compensation. *See Travelers*, 409 S.W.2d at 179.

Having clarified that an implied obligation to indemnify may indeed be imposed "when the obligation is a necessary element of the parties' relationship," we turn to the specifics of the case at hand. A review of the existing law leads us to conclude that, here, the question of implied indemnity is inextricably linked to the loaned servant issue. The issue of whether Mr. Blackwell was a loaned servant is a question of fact, *see id.*, and a review of the record indicates that there is at least a genuine factual dispute concerning this point.[5] If we do not know for certain whether Mr. Blackwell was a loaned servant, we cannot determine if an indemnity obligation was a necessary element of the relationship between Ford and Comanche. We emphasize that at this stage of the proceedings, the issue is not whether Hartford is ultimately entitled to indemnification from Comanche. The limited issue before us in this interlocutory appeal is whether Comanche was entitled to summary judgment. Viewing the evidence in the light most favorable to Hartford, as we are required to do at this stage, we conclude that Hartford's evidence was sufficient to withstand the motion for summary judgment.

Alternatively, Comanche argues, as did the defendant insurer in *Travelers*, that

---

[5] It should be noted that although the trial court found that Hartford "made out a prima facie case" as to this point, the court did not make a factual finding that Mr. Blackwell was a loaned servant. Rather, it found that Hartford presented enough evidence of such to survive Comanche's motion for summary judgment.

Hartford's claim is actually one for subrogation, for which the statute of limitations has run. Comanche points to evidence in the record in the form of emails suggesting that the Blackwells agreed to cooperate with Hartford in pursuing the declaratory judgment action. In exchange, Hartford purportedly agreed to return to the Blackwells any excess in recovery over Hartford's payment of benefits and expenses. Even so, the trial court dismissed Comanche's argument, again citing *Travelers*, and concluded that Hartford's claim was one for indemnity, not subrogation. We agree. The supreme court in *Travelers* made clear that when one employer brings a claim against another employer for reimbursement of benefits paid to an injured employee on the basis that an employee was a loaned employee that the cause of action is one for indemnity. *See id.* at 178-79. Evidence of a contemporaneous agreement between Hartford and the Blackwells does not change the nature of this cause of action as it relates to the applicable statute of limitations.

We note that Comanche also suggested in its motion for summary judgment that if Hartford is ultimately permitted to recover an amount that exceeds its subrogation interest and remits that sum to the Blackwells, this would "fl[y] in the face of the exclusivity provision of Tenn. Code Ann. § 50-6-108." Likewise, on appeal, Comanche briefly suggests that allowing Hartford to recover in this lawsuit "would effectively require that Comanche be deemed both the employer and the tortfeasor in direct contravention of the exclusivity provisions of the Tennessee Workers' Compensation Act." However, in denying the motion for summary judgment, the trial court made no ruling with respect to the exclusivity rule, and consequently, we express no opinion on appeal as to this issue.

We, therefore, conclude that the trial court did not err in denying Comanche's motion for summary judgment.

## IV. CONCLUSION

For the aforementioned reasons, we affirm the decision of the chancery court and remand for further proceedings consistent with this opinion. Costs of this appeal are taxed to the appellants, Comanche Construction, Inc., Comanche Construction of Georgia, Inc., and Seabright Insurance Company, for which execution may issue if necessary.

_____
BRANDON O. GIBSON, JUDGE

8