SCOTT v. McREYNOLDS et al.—255 S. W. (2d) 401.

Middle Section. June 27, 1952.

Petition for Certiorari denied by Supreme Court, December 5, 1952.

B. J. Boyd, of Ashland City, John F. Killebrew, of Nashville, for complainant.

Jake A. O'Brien, O'Brien Price and Allen M. O'Brien, all of Springfield, for defendants.

HOWELL, J. Previous to October 31, 1949, the complainant G. T. Scott, Jr. and the defendant J. C. McReynolds, Jr. were engaged in business as partners under the name of the Nashville Butane Gas Company at Nashville, Tennessee, and on the date mentioned they entered into a partnership dissolution contract in which it was provided among other things that:

"J. C. McReynolds, Jr. further agrees that he will not hereafter engage in the retail business of selling Butane-Propane gas or appliances for such gas within a fifty mile radius of Nashville, Tennessee, nor will he work for anyone in a retail capacity engaged in such a business, except that he may enter such business in Springfield, Tennessee, and work in all directions except toward Nashville, Tennessee."

On July 30, 1951, the complainant filed the bill in this case against the defendant J. C. McReynolds, Jr. and the Carden-McReynolds Gas Co. Inc., of Springfield, Tennessee, in which it is alleged that the defendants are operating in violation of the dissolution agreement and an injunction is prayed for enjoining and restraining them from so doing. The bill also prayed for damages for violations of the contract.

Defendant J. C. McReynolds, Jr., filed an answer in which he denied the material allegations of the bill and prayed for a construction of the contract averring that this contract was void because it was not definite as to time, was indefinite as to territory and was in violation of public policy. The defendant corporation filed an answer in which it averred that it was not bound by the contract, that the contract was invalid for the same reasons as set out in the answer of J. C. McReynolds, Jr. and also denied that complainant was entitled to any relief.

The case was heard by the Chancellor upon oral testimony. On September 10, 1951, a decree was entered which is in part as follows:

"From all of which the court finds that the contract sued upon meets all the requirements of a valid contract, is neither oppressive nor unreasonable, does not appear to be injurious to the interest of the public, nor to interfere with, or endanger, the public welfare and safety, is not one in general restraint of trade, but one in which the restraint is limited alone to certain territory, and said contract is supported by a good and valuable consideration, entered into by the parties fairly and understandingly, and the partial restraint of trade contained therein is such only as will afford a fair protection to the interest of the complainant and is not so large or extensive as to interfere with the interest of the public.

"And the Court further finds that the territorial limitations intended by the parties thereto is that territory which is limited generally on the East by a straight line drawn from the extreme easternmost point of the corporate limits of the City of Springfield, Tennessee to the extreme easternmost point of the corporate limits of the City of Nashville, Tennessee—said straight line continuing in the same direction until it intersects the fifty mile radius of the City of Nashville, Tennessee, and limited generally on the West by a straight line drawn from the extreme westernmost point of the corporate limits of the City of Springfield, Tennessee to the extreme westernmost point of the corporate limits of the City of Nashville, Tennessee—said straight line continuing in the same direction until it intersects the fifty miles radius of the City of Nashville, Tennessee,

and between the two lines, as above indicated, and which would necessarily include the City of Nashville, Tennessee, lies the territorial limitation of the contract construed by the Court.

"The Court further finds that the defendant, J. C. McReynolds, Jr. was one of the prime movers in the organization of the defendant corporation, Carden-McReynolds Gas Company, Inc., is one of the principal stockholders, being the owner of forty-nine out of one hundred shares of the capital stock of the corporation, and together with his wife own one half of the entire stock thereof, that he is actively engaged in the business of said corporation which is selling at retail Butane-Propane Gas and appliances in connection with the use of such gas, which is the same kind of business in which complainant is engaged, and through said corporation is in competition with the complainant.

"The Court further finds that the defendant corporation, Carden-McReynolds Gas Co., Inc.. has made sales to the former customers of the complainant and has made some of said sales within the restricted territory as found by the Court, particularly in the Lickton Community of Davidson County, Tennessee.

"The Court further finds because of said facts and the association and connections of J. C. McReynolds, Jr. with said company, that the defendant, Carden McReynolds Gas Co., Inc., is bound by the agreement which was entered into by and between the complainant and the defendant, J. C. McReynolds, Jr.

"The Court further finds that within the limited territory above described neither the defendant J. C. McReynolds, Jr. nor the defendant, Carden-McReynolds Gas Co., can engage in the retail business of

selling Butane-Propane Gas or appliances for such gas, or work for anyone in a retail capacity engaged in such business.''

The complainant and the defendants have all appealed to this Court and have assigned errors.

It is insisted for the complainant that the Chancellor erred in holding that the defendants be enjoined only in the territorial limits set out in the decree and in failing to hold that they be enjoined from doing business in that certain territory within a fifty mile radius of the City of Nashville, Tennessee, lying South of a straight line drawn from the southernmost corporate limits of the City of Springfield, Tennessee, in an eastern and western direction until said line intersects the fifty mile radius of the City of Nashville, Tennessee, on the East and the West.

The defendants have filed eleven assignments of error in which it is insisted that the contract in question is void, that the defendant corporation is not bound by it and that the Chancellor erred in describing the boundaries within which it is enjoined from doing business.

We have carefully examined the entire record and concur with the Chancellor in his finding of facts.

In Vol. 36 Am. Jur., Sec. 58, page 537 is the following:

''In accordance with the rules which have been noted in the foregoing sections, and subject to the qualifications herein after mentioned, numerous authorities hold that a covenant which is incidental to the sale and transfer of a trade or business, and which purports to bind the seller not to engage in the same business in competition with the purchaser, is lawful and enforceable. While such covenants are designed to prevent competition on the part of the seller, it is ordinarily neither their purpose nor effect

to stifle competition generally in the locality, nor to prevent it at all in a way or to an extent injurious to the public. The business in the hands of the purchaser is carried on just as it was in the hands of the seller; the former merely takes the place of the latter; the commodities of the trade are as open to the public as they were before; the same competition exists as existed before, there is the same employment furnished to others after as before; the profits of the business go as they did before to swell the sum of public wealth; the public has the same opportunities of purchasing, if it is a mercantile business; and production is not lessened, if it is a manufacturing plant.

"A professional practitioner who sells his practice may as an incident thereto make a reasonable agreement not to practice his profession so as to compete with the purchaser. Generally, no distinction is made between the agreements of professional men and those of tradesmen.

"The Federal anti-trust laws do not invalidate such contracts although trade and commerce among the states may be restrained thereby. Nor do state laws of the same character render them illegal unless the statutory provisions require a different conclusion. Such restrictive agreements are expressly permitted by the statutes of some states."

Section 59, Vol. 36 is in part as follows:

"Inasmuch as a member of a partnership has an existing interest in the good will of the firm's business, an agreement not to engage in a competing business, made by a retiring member of a firm who sells his interest to the remaining partner, stands on

the same footing as a sale of the good will by a merchant or manufacturer. A partnership agreement may validly provide that in event of a partner's withdrawal from the firm, he shall not engage in the business in which the partnership is engaged. Some statutes expressly provide that a partner may, upon or in anticipation of a dissolution of the partnership, agree not to carry on a similar business at the same place. There may, however, be situations which require the conclusion that such a restrictive agreement is unreasonable and invalid.''

 In 17 C. J. S., Contracts, Sec. 244, p. 624, it is said:

''Generally, an agreement imposing a restraint reasonably limited in space is not against public policy, although unlimited in time of operation, regardless of the nature of the business or occupation restrained.

''Although it has been said that contracts imposing a restraint indefinite in time or for an unreasonably long period of time are not favored, and as indicated later in this section, will not, under some circumstances, be enforced, generally, even according to the early rule, it is no objection to an agreement reasonably limited in point of space that it is unlimited in point of time and may, therefore, continue during the whole life of the party restrained. Thus the courts have repeatedly sustained as valid agreements by the vendor of a business, trade, or profession, or by employees, etc., without limitation as to time, not to carry on the business, trade, or profession in a certain town, village, city, or county, even though it be a large city; within certain limits in a

city; in a town or city, and vicinity; or at any place which will interfere with the business sold. An agreement not to engage in a certain business in a certain town, territory surrounding a city or country, while another carries on the same business there, is valid."

In the recent case of Commerce Street Co., Inc., v. Goodyear Tire & Rubber Co., Inc., 31 Tenn. App. 314, 215 S. W. (2d) 4, 10, this Court said:

"It is the duty of the court in the construction of contracts to ascertain the intention of the contracting parties, understand what they meant by the contract, and give effect to such understanding and meaning. All other rules of construction are only aids or helps in establishing the intention of the parties and their mutual understanding of the meaning of their contract.

"The motives which induced the contract have a definite bearing upon the intention of the parties. The object and purpose to be effected furnish valuable aids in ascertaining such intention. McNairy v. Thompson, 33 Tenn. 141, 142; Nashville & N. W. R. Co. v. Jones, 42 Tenn. 574; Taylor v. Neblett, 51 Tenn. 491; Mills v. Paris, 59 Tenn. 451; Nunelly v. Warner Iron Co., 94 Tenn. 282, 29 S. W. 124; Perkins Oil Co. v. Eberhart, 107 Tenn. 409, 64 S. W. 760."

The consideration for the sale of his interest in the partnership by J. C. McReynolds, Jr. to G. T. Scott, Jr. was $10,000 and Mr. McReynolds' agreement as set out in the contract.

The Chancellor in an able and well considered opinion said:

"It is insisted by defendants that the language used in the controversial portion of said contract, especially the following, '& work in all directions except toward Nashville, Tennessee,' is so vague, indefinite and ambiguous that the exact territory in which defendant McReynolds agreed not to engage in business cannot be determined, and consequently the contract must be held to be void.

"While there is some ambiguity in the language above quoted, I am of the opinion that such ambiguity may be clarified and said language given a fair and reasonable construction, when read in the light of the entire contract and the facts and circumstances surrounding the parties at the time the said contract was entered into, so as to definitely fix the territorial limitations intended and to preserve the validity of the contract. It is the duty of the courts to construe written contracts, if their meaning be in doubt, so as to give them effect rather than destroy them. New Memphis Gaslight Cases (Rawlings v. New Memphis Gaslight Co.) 105 Tenn. 268 [60 S. W. 206]; Frierson v. International Agricultural Corp., 24 Tenn. App. 616 [148 S. W. (2d) 27]. It will be presumed that one intended to execute a valid rather than an invalid contract. Hestand v. Johnson, 182 Tenn. 84 [184 S. W. (2d) 175].

■ "McReynolds expressly agreed that he would not engage in the retail business of selling Butane-Propane gas or appliances within a fifty mile radius of Nashville, with certain stated exception, that is, it was agreed that he could enter into such business in the city of Springfield, Tennessee, and work in all directions from Springfield except toward Nashville.

Springfield was definitely fixed as the point from which said defendant could work in all directions except toward Nashville. Standard dictionaries define the word 'toward' as meaning 'in the direction of'. McReynolds could, therefore, under said contract work in all directions from Springfield except in the direction of Nashville. Springfield is located generally northwardly, or slightly northwestwardly, from Nashville, one traveling from any point in the city of Springfield *toward or in the direction of* the city of Nashville would be limited generally on the east by a straight line drawn from the extreme easternmost point of the corporate limits of Springfield to the extreme easternmost point of the corporate limits of Nashville, and likewise would be limited generally on the west by a straight line drawn from the extreme westernmost point of the corporate limits of Springfield to the extreme westernmost point of the corporate limits of Nashville. Between the two lines drawn as above indicated, and which would necessarily include the city of Nashville, would lie the territorial limitation of the contract now before the court, and the territory within which McReynolds could not carry on said business. This seems to be the most reasonable interpretation of the language of the contract, here in dispute, with reference to the location of the intended limited territory. Such construction gives to each word of the instrument its generally accepted meaning, and thereby renders the whole contract as written reasonably clear. No other logical way appears by which the boundaries of the limited territory can be definitely located.

"McReynolds does not deny as a fact that the parties to the contract intended to fix a limited territory within which he would not engage in said business of selling gas and appliances at retail, but confirms the same. He testified that he understood that Scott wanted to retain the good will of customers already had, and that Scott stated that he wanted to protect his customers at Nashville, by the contract. The contract was originally prepared by, or at the instance of, Scott, and evidently did not contain any exceptions to the territorial limitation fixed as being within a fifty mile radius of Nashville. When the contract was presented to McReynolds the latter suggested that Springfield be excluded from said restricted territory, and the contract was evidently then rewritten so as to permit McReynolds to engage in said business in the city of Springfield and to work in all directions therefrom except toward or in the direction of Nashville.

"Both parties appear to have been equally responsible for the inclusion in the contract of the controversial language hereinabove quoted and now before the court for construction.

"The court is of the opinion that said contract is not void and invalid for any of the reasons assigned by the defendant McReynolds in his answer to the complainant's bill, and holds that said contract with said controversial portion thereof construed as hereinabove set forth, is valid and binding upon the parties.

"It is insisted in behalf of the defendant, Carden-McReynolds Gas Company, Inc., in addition to other defenses set out in the answer of said defend-

ant, that, in any event, it is not bound by any agreement signed by McReynolds while he was not an agent of the corporation. This contention cannot be fully sustained in this case. McReynolds was one of the prime movers in the organization of said corporation, is its president, and is one of the principal stockholders, being the owner of forty nine out of one hundred shares of the capital stock of the corporation and together with his wife owning one-half of the entire stock therof. He is actively engaged in the business of said corporation, which is selling at retail Butane-Propane gas and appliances in connection with the use of such gas, which is the same kind of business in which complainant is engaged and through said corporation is in competition with complainant. Said corporation has made sales to former customers of the complainant, and has made some of said sales within the restricted territory as hereinabove declared, particularly in the Lickton community of Davidson County, Tennessee.

"Certainly one should not be permitted to do indirectly that which he cannot do directly."

We fully agree with the Chancellor in his conclusion. The decree is a most reasonable and fair construction of a valid and enforceable contract and should be affirmed.

All assignments of error are overruled, and the decree of the Chancery Court is affirmed.

The complainant and defendants will each pay one half of the costs of the appeal.

Affirmed.

Felts and Hickerson, JJ., concur.