# REAL ESTATE MANAGEMENT, INC. v. MARGARET GILES et al.—293 S. W. (2d) 596.

Eastern Section. May 9, 1956.

Petition for Certiorari denied by Supreme Court, July 20, 1956.

348

Folts, Brammer, Bishop & Thomas and Milton D. McClure, Chattanooga, for appellant.

Wilkerson & Meacham, Chattanooga, for appellee.

HOWARD, J. The original bill herein was filed by the complainant, Real Estate Management, Inc., against the defendants, Margaret Giles and C. E. Freeman, as a bill of interpleader to determine which of the defendants was entitled to the sum of $1,000 held by the complainant as an earnest money deposit on a contract signed by defendant Freeman to purchase a tract of land owned

by the defendant Giles. The bill prayed that the defendants be required to establish their rights to the deposit made under the terms of the agreement or purchase said land.

By agreed decree the bill was sustained, and the defendants were required to interplead and to establish their claim to the $1,000.

The controversy between the defendants arose out of the offers made by Freeman to purchase three contiguous tracts of land which he wanted to acquire for business purposes. The largest of these tracts was owned by Margaret Giles, and the two smaller tracts were owned by Paul Dubrow and Dr. N. B. Callier, said tracts being described as follows:

Giles Tract:

"West 149' of Lot No. 21, Blk. 4, Vaughn's Addition, and the West 149' of the North 50' of Lot No. 22, Blk. 4, Vaughn's Addition, and the East 106' of the North 75' of Lot No. 21, Blk. 4, Vaughn's Addition".

Dubrow Tract:

"South 25' of the East 106' of Lot 21, Blk. 4, Vaughn's Addition, and the North 50' of the East 106' of Lot 22, Blk. 4, Vaughn's Addition".

Dr. Callier Tract:

"South 50' of Lot No. 22, Blk. 4, Vaughn's Addition".

The offers were made after Freeman contacted J. H. Persinger, a real estate agent with Real Estate Management, Inc., with the suggestion that the agent make

inquiry of the owners as to whether the three tracts could be purchased. In order to get the plan into definite shape, the agent prepared three separate offers which were signed by Freeman, who deposited with the agent as earnest money $1,000 on the Giles offer, and $250 each on the other two offers. The Giles offer was addressed to the Chattanooga Realty Company, Agents, and the other two offers were addressed to Paul Dubrow and Dr. N. B. Callier, respectively, and each offer not only specified the amount Freeman was willing to pay for each tract, as will hereafter appear, but each offer also contained the following conditions:

Offer to Giles: $31,250.

"The following provisions and stipulations are a part of this offer: Is contingent upon buyer's being able to purchase" (Dubrow and Callier properties described above).

Offer to Dubrow: $5,500.

"The following provisions and stipulations are a part of this offer. This offer is contingent upon buyer being able to purchase" (Callier and Giles properties described above).

Offer to Dr. Callier: $6,500.

"The following provisions and stipulations are a part of this offer. This offer is contingent upon buyer's being able to purchase" (Dubrow and Giles properties described above)

Each of the above offers was made on printed forms of the Real Estate Management, Inc., and contained acceptance provisions whereby the owner (1) agreed to pay a percentage commission upon the sale price, and (2)

agreed to a division of the forfeited earnest money in the event the purchaser failed to complete the transaction.

The offer to Miss Giles was signed by Freeman sometime in January, 1954, and was accepted by her on February 8th, on which date she also executed a deed conveying the property to Freeman who, for reasons hereinafter appearing, declined to complete the transaction. The offers to Dubrow and Dr. Callier were both signed by Freeman on February 23, 1954, and later when submitted Dr. Callier rejected the $6,500 offer and made a counter offer of $9,500, which was rejected by Freeman. Thereafter, the offer to Dubrow who had previously listed his tract for sale with the Chattanooga Realty Company for $8,500, was never submitted to him, and the two $250 deposits were subsequently returned by Real Estate Management, Inc., to Freeman. As to the $1,000, both Miss Giles and Freeman made demand upon Real Estate Management, Inc., therefor, and being unable to determine who was entitled thereto, said Company filed this bill of interpleader, waiving all claims to the money which was, upon the bill being sustained, paid into the office of the Clerk of the Court.

█ Upon the hearing the Chancellor held, among other things, that the following condition in Freeman's offer—"contingent upon buyer's being able to purchase," referred to his financial ability; that Freeman was able financially to purchase the Dubrow and Callier tracts at prices which were "within the bounds of reason," and from a decree awarding Miss Giles the $1,000, Freeman has perfected a broad appeal to this Court where, under our procedure, the case is reviewable de novo. Fletcher v. Russell, 27 Tenn. App. 44, 177 S. W. (2d) 854; Sec. 27-113, T. C. A.

After reading the record and giving careful consideration to the three offers made by Freeman, we have concluded that the learned Chancellor not only placed a strained construction upon the words "contingent upon buyer's being able to purchase," but likewise erroneously disregarded the undisputed proof as to what the obvious intention of the parties was at the time the offers to purchase were prepared and signed by Freeman.

██ Generally, in construing contracts the Courts not only look to the language of the instrument, but must ascertain, if possible, the intention of the parties, and the construction which is fair and reasonable will prevail. Scott v. McReynolds, 36 Tenn. App. 289, 255 S. W. (2d) 401; Couch v. Couch, 35 Tenn. App. 464, 248 S. W. (2d) 327; Commerce Street Co., Inc., v. Goodyear Tire & Rubber Co., Inc., 31 Tenn. App. 314, 215 S. W. (2d) 4; Nashville Terminal Co. v. Tennessee Central Ry. Co., 2 Tenn. App. 646. And where several instruments are made as part of one transaction, they will be read together and each will be construed with reference to the other. Great American Indemnity Co. v. Utility Contractors, Inc., 21 Tenn. App. 463, 111 S. W. (2d) 901; 17 C. J. S., Contracts, sec. 298, p. 714.

Applying the foregoing rules of construction to the offer made to Miss Giles, did Freeman, a successful business man, by using the words "able to purchase", have reference to his financial ability? Did he intend to unconditionally obligate himself to purchase the Dubrow and Callier tracts at prices he might consider excessive, as insisted on behalf of Miss Giles. Or, on the other hand, is it not reasonably apparent that Freeman, by using the words in question, had reference to his being able to acquire the tracts at prices designated in his

offers or at prices acceptable to him. The latter appears to be not only the more logical and reasonable construction, but the undisputed proof shows that such was Freeman's intention prior to and when the offers were signed by him.

■■ A conditional contract is a contract whose very existence and performance depends upon the happening of some contingency or condition expressly stated therein, and in the instant case Freeman's liability, under the Giles offer, did not attach because the conditions prerequisite to liability were never fulfilled. Mack v. Hugger Bros. Const. Co., 10 Tenn. App. 402; 17 C. J. S., Contracts, secs. 338, 456, pp. 792, 937-938; 12 Am. Jur. Sec. 328, p. 883.

Accordingly, the decree of the learned Chancellor will be reversed, and a decree will be entered in this Court awarding the $1,000 in question to the defendant C. E. Freeman. All the costs will be adjudged against the defendant Margaret Giles, and the cause will be remanded for the paying out of the money and for all other necessary orders.

McAmis, P. J., and Hale, J., concur.