**HARDEMAN COUNTY BANK, Bank of Bolivar, and Merchants and Planters Bank of Toone, Plaintiffs/Appellees,**

v.

**Robert STALLINGS d/b/a Stallings Tractor Co., Mike Waller and Frieda Waller d/b/a Farmers Supply And Elevator, and Fawcett Lumber Company, Inc., Defendants/Appellants.**

Court of Appeals of Tennessee, Western Section.

Aug. 24, 1995.

Application for Permission to Appeal Denied by Supreme Court Jan. 29, 1996.

James A. Hopper, Savannah, for Mike Waller and Frieda Waller d/b/a Farmer's Supply and Elevator, Defendants/Appellants.

Nancy L. Choate, Jackson, Billy Jack Goodrich, Jackson, for Plaintiffs/Appellees.

FARMER, Judge.

This case concerns the enforceability of a personal guaranty executed by appellants, Mike Waller and Frieda Waller d/b/a Farmer's Supply and Elevator, for the benefit of the appellees, Hardeman County Bank, Bank of Bolivar and Merchants and Planters Bank of Toone.[1] The trial court entered judgment

1. For brevity, the three appellees will be collectively referred to as the "Banks" or "Appellees" throughout this opinion.

2. A money judgment was also entered against defendant, Robert Stallings, d/b/a Stallings Tractor Company, who elected not to appeal.

for the Banks as against the Wallers[2] in the amount of $42,765.67 and awarded an additional $10,030 in attorney fees. The Wallers have appealed, citing as error the trial court's refusal to grant their request for a jury trial and its failure to apply the applicable statute of limitations or the doctrine of laches as a means to preclude enforcement of the guaranty. For reasons hereinafter discussed, we affirm the judgment of the trial court.

This lawsuit results from the attempts by various entities to maintain in operation the last railroad line in Hardeman County. To this end, the Hardeman County Railroad Company, Inc. (HCRC), composed of concerned individuals and businesses, was formed. In August 1982, the Industrial Development Board of the County of Hardeman (Board) agreed to purchase the railroad (the real property and accompanying "facilities" necessary for operation of the railroad) and lease it to HCRC. The acquisition was pursuant to the Board's issuance of Industrial Revenue Bonds, Series of 1982, in the amount of $600,000. The bonds were purchased by the Banks on the following pro rata basis: Hardeman County Bank, $355,000; Bank of Bolivar, $174,000; and Merchants and Planters Bank of Toone, $71,000. The Board secured its indebtedness by entering into an Indenture of Mortgage and Deed of Trust with Hardeman County Bank as trustee.

A lease agreement between the Board and HCRC was executed on August 26, 1982. The Board's ultimate objective was to sell the leased premises to HCRC at the expiration or earlier termination of the lease. The lease obligated HCRC to pay "basic rent" to the Board in a total amount equal to the principal and interest due by the Board to the Banks. HCRC was also obligated to pay "additional rent" to include interest on all overdue installments of the basic rent.[3]

3. The lease states:

This lease is a net Lease and so long as any part of the Bond Indebtedness is outstanding and unpaid the Basic Rent, Additional Rent and all other sums payable hereunder to or for the account of Lessor shall be paid, without notice or demand or without set-off, counter-

On August 26, 1982, a guaranty agreement was executed between HCRC and Hardeman County Bank, as Trustee, providing, as here pertinent:

[I]n consideration of the premises, [HCRC] ... covenants with the Trustee as follows:

....

### Covenants of the Guarantor

*Section 2.1.* [HCRC] hereby unconditionally guarantees to the Trustee for the benefits of the holders from time to time of the Bonds.

(a) the full and prompt payment of the principal of the Bonds when and as the same shall become due, whether at stated maturity, by acceleration, call for redemption, or otherwise; and

(b) the full and prompt payment of any interest on any Bond when and as the same shall become due.

....

*Section 2.2.* The obligations of [HCRC] under this Guaranty shall be absolute and unconditional and shall remain in full force and effect until the entire principal of and interest on the Bonds shall have been paid or provided for in accordance with the Indenture. Such obligations shall not be affected, modified or impaired upon the happening from time to time of any event, including, without limitation, any of the following, whether or not with notice to, or the consent of, [HCRC]:

....

(h) any failure, omission, delay or lack on the part of the Issuer or the Trustee to enforce, assert or exercise any right, power or remedy conferred on the Issuer or the Trustee; or any other action or inaction on the part of the Issuer, the Trustee or any of the holders from time to time of the Bonds;

(i) the voluntary or involuntary liquidation, dissolution, sale or other disposition of all or substantially all of the assets, marshalling of assets and liabilities; ... or other similar proceeds affecting, [HCRC], the Lessee or the Is-

suer or any of the assets of any of them, or any allegation or contest of the validity of the Guaranty in any such proceeding; [4]

....

*Section 2.3.* No setoff, counterclaim, reduction, or diminution of any obligation, nor any defense of any kind or nature which [HCRC] or Lessee has or may have against the Issuer or the Trustee, shall be available hereunder to [HCRC] against the Trustee.

....

### Miscellaneous

....

*Section 3.3.* ... No delay or omission to exercise any right or power accruing upon any default, omission or failure of performance hereunder shall impair any such right or power or be construed to be a waiver thereof, but any such right and power may be exercised from time to time and as often as may be deemed expedient.

The agreement further states that in the event of default, the trustee shall have the right to proceed first against HCRC without proceeding against or exhausting any other remedies or resorting to any other security.

In addition to the aforementioned, a personal guaranty was executed by the appellants and other HCRC shareholders on August 26, 1982. It is this personal guaranty that is at issue before this court. It states:

The undersigned, in consideration of the Lease dated August 26, 1982 granted to Hardeman County Railroad Company, Inc., by The Industrial Development Board of the County of Hardeman, Tennessee (the "Lease"), and for other good and valuable consideration, receipt of which is hereby acknowledged, hereby unconditionally guarantee: (1) the obligations of Hardeman County Railroad Company, Inc. contained in the Lease to make payments of Basic Rent, Additional Rent, and All Unpaid Installments of Rent, as such terms are defined in the Lease and (2) the

---

claim, abatement, suspension, deduction, diminution or defense.

**4.** The guaranty identifies HCRC as "lessee" and the Board as "issuer."

obligations of Hardeman County Railroad Company, Inc. contained in the Guaranty Agreement dated August 26, 1982 between it and Hardeman County Bank, as Trustee. This guaranty made the guarantors only severally responsible for the indebtedness and the Wallers' liability was limited to 20.75%.

On August 30, 1984, the Trustee declared HCRC in default. Foreclosure proceedings and the liquidation of all assets were commenced, with the proceeds therefrom applied to reduce the indebtedness. Liquidation was completed in 1990. On August 4, 1992, the Banks filed the present action, claiming a total deficiency of $144,950.73 and seeking recovery from the Wallers for their respective share of this amount.

The Wallers initially filed a pro se answer to the complaint on October 6, 1992. On July 27, 1993, after retaining counsel, the Wallers filed a "motion to supplement answer" and a separate motion to request a jury trial. A supplemental answer was then filed wherein affirmative defenses were raised, including laches and the statute of limitations. The supplemental pleading also included a request that the matter be heard by a jury. The trial court denied the request and after a trial on the merits, determined that the personal guaranty was an "absolute, unconditional guaranty"; that pursuant to its terms, the Wallers waived any defenses, including the statute of limitations; and that the equitable defense of laches was not applicable.

The appellants state the issues on appeal as follows:

1. The Court below was in error in failing to rule that the Guaranty signed by the Wallers was barred by the six year statute of limitations for a guaranty agreement contract as provided by T.C.A. 28–3–109, which bars any actions on a guaranty agreement not commenced within six years after the cause of action accrued.

2. In the alternative, the Court was in error below in ruling that the equitable defense of laches would [not] apply in this

case wherein the note was declared in default August 26, 1984; the property was all sold either private or by foreclosure in 1990 and the suit was not filed until some two years thereafter on August 4, 1992.

3. That the court was in error in not granting to the Wallers the right to a jury trial wherein after they filed their pro se Answer an attorney was retained and new defenses were alleged in an Answer, including but not limited to the statute of limitations, laches, waiver and estoppel, all as provided by T.R.C.P. Rule 38.02.

We first consider whether the trial court erred in failing to hold the appellees' action time barred.[5] The Wallers argue the applicability of § 28–3–109 because the action was not brought within six (6) years of the date of default. They assert that "there is no written agreement on [their part] . . . that the guaranty would run beyond the six year statute of limitations."

Resolution of this issue requires proper interpretation of the language contained in both the personal and corporate guaranties, as the former specifically references the latter.

It is a well-recognized principle of contract construction that the intention of the parties as ascertained from the entire context of their agreement is controlling. And where an executed agreement refers to other documents and makes their conditions part of the executed agreement, the documents must be interpreted together as the agreement of the parties. *Real Estate Management v. Giles,* 41 Tenn.App. 347, 293 S.W.2d 596; *Scott v. McReynolds,* 36 Tenn.App. 289, 255 S.W.2d 401; *Gibbs v. Trinity Universal Ins. Co.,* Okl., 330 P.2d 1035; 9 Am.Jur., Building and Construction Contracts, Sec. 96, p. 62; 11 C.J.S. Bonds § 43, P. 423, and cases there cited.

*Engert v. Peerless Ins. Co.,* 53 Tenn.App. 310, 382 S.W.2d 541, 547 (1964).

5. T.C.A. § 28–3–109(a)(3) states: **Rent—Official misconduct—Contracts not otherwise covered—Title insurance—Demand notes.—**(a) The following actions shall be commenced within six (6) years after the cause of action accrued:

. . . .

(3) Actions on contracts not otherwise expressly provided for.

The personal guaranty was signed by Mike Waller on behalf of Mike and Frieda Waller d/b/a Farmer's Supply and Elevator. It provides for the unconditional guarantee by the undersigned of the obligations of HCRC "contained in the Guaranty Agreement dated August 26, 1982 between it and Hardeman County Bank, as Trustee." This corporate guaranty provides that HCRC's obligations are "absolute and unconditional" until the entire debt including interest is paid. It further holds HCRC's obligations not "affected, modified or impaired upon the happening from time to time of any event," including the trustee's delay "to enforce, assert or exercise any right, power or remedy conferred. . . ." We find this language clear and unambiguous.

■ It is incumbent upon this court to enforce contracts according to their plain terms. *Bob Pearsall Motors, Inc. v. Regal Chrysler–Plymouth, Inc.*, 521 S.W.2d 578, 580 (Tenn.1975). The interpretation of unambiguous agreements is a question of law for the courts and we are to interpret them as written. *Malone & Hyde Food Services, v. Parson*, 642 S.W.2d 157, 159 (Tenn.App. 1982). This is true even though the agreement may contain terms thought harsh and unjust. *E.g., Estate of Haynes v. Braden*, 835 S.W.2d 19, 21 (Tenn.App.1992); *Allstate Ins. Co. v. Wilson*, 856 S.W.2d 706, 708 (Tenn.App.1992).

*First American Bank v. Woods*, 734 S.W.2d 622 (Tenn.App.1987), holds that the statute of limitations "may be waived by express contract or by necessary implications." *First American*, 734 S.W.2d at 630 (quoting *Jackson v. Kemp*, 365 S.W.2d 437, 439 (Tenn.1963)). We conclude that, by executing the personal guaranty, the Wallers expressly waived their right to plead the statute of limitations as a defense to this action. In addition, we find the record indicative of an implied waiver by the appellants as the evidence supports the trial court's finding that the HCRC stockholders, including Mr. Waller, sought and received permission from the Banks to be allowed to liquidate the assets of the railroad company prior to any pursuit being made to enforce the personal guaranty. Finally, as further support for our ruling, we note the court's decision in *Union Planters Nat'l Bank v. Markowitz*, 468 F.Supp. 529 (W.D.Tenn.1979), holding the statute of limitations inapplicable to a guaranty agreement which by its own terms is rendered "continuing, absolute and unconditional." *Markowitz*, 468 F.Supp. at 532. This issue is without merit.

■ The appellants next argue that the trial court erred in holding the equitable defense of laches inapplicable. They contend that this defense is appropriate due to the fact that the Banks waited some 9 years after the default and 2 years after liquidation of all the assets before bringing suit. They assert that the Banks did not make clear their intention to pursue any deficiency until July 1992 and that notice of such intent should have been given, at the latest, after liquidation of all the assets in 1990, to halt the accrual of interest and other expenses. Conversely, it is the appellees' position that Appellants failed to prove that they were prejudiced by any delay in filing suit, as the additional time allowed for liquidation of all assets and a reduction in the Wallers' personal liability under the guaranty. They further assert that the defense was waived upon execution of the guaranty.

■ The doctrine of laches is a defense peculiar to courts of equity. *Consumer Credit Union v. Hite*, 801 S.W.2d 822, 825 (Tenn.App.1990). Its applicability is dependent upon the facts presented in each case, *Freeman v. Martin Robowash, Inc.*, 61 Tenn. App. 677, 457 S.W.2d 606, 611 (1970), and lies within the discretion of the trial court. Absent a showing of abuse, the trial court's decision as to its application will not be reversed on appeal. *John P. Saad & Sons, Inc. v. Nashville Thermal Transfer Corp.*, 715 S.W.2d 41, 46 (Tenn.1986). Considering the facts before us, we find no abuse of discretion by the trial court in this regard.[6]

---

6. We note that the appellees, in their brief, argue the unavailability of the doctrine to actions pursued solely at law. They cite *Markowitz*, 468 F.Supp. at 533. The court of appeals, in *Conti-* *nental Bankers Life Insurance Co. v. Simmons*, 561 S.W.2d 460 (Tenn.App.1977), however, held that although suit on a note is "not a matter of an inherently equitable nature," once equitable

Lastly, the appellants assert as error the trial court's failure to grant their request for a jury trial. They cite Rule 38.02 T.R.C.P. which provides:

Any party may demand a trial by jury of any issue triable of right by jury by demanding the same in any pleading specified in Rule 7.01 or by endorsing the demand upon such pleading when it is filed, or by written demand filed with the clerk, with notice to all parties, within 15 days after the service of the last pleading raising an issue of fact.

The appellants made no demand for a jury trial in their original answer, filed October 6, 1992. Their first request was made in a supplemental answer and separate motion, both filed on July 27, 1993. The appellants argue their compliance with the Rule because the supplemental pleading raised "new legal defenses based upon the statute of limitations, laches, estoppel, waiver, satisfaction and accord."

This issue was addressed by this court in *Trimble v. Sonitrol of Memphis, Inc.*, 723 S.W.2d 633 (Tenn.App.1986) when stating: "[i]t is now well settled that where the amendment creates new jury issues, a party upon timely demand therefor is entitled to a jury trial, if the amended pleading sets forth new factual issues and not merely a different legal theory." *Trimble*, 723 S.W.2d at 640 (quoting 5 *Moore's Federal Practice*, § 38.41, p. 38–366). According to *Trimble*, "the *issue* contemplated by the Rule is one of fact." *Id.* (emphasis in original) (quoting *Trixler Brokerage Co. v. Ralston–Purina Co.*, 505 F.2d 1045 (9th Cir.1974)). In *Trimble*, one of the defendants filed an amended answer and countercomplaint alleging various legal theories for recovery. *Id.* at 637. The court concluded that these pleadings arose "from the same transaction, occurrences and events that were subject of the original complaint" and that, therefore, the original complaint was the last pleading raising a factual issue. Thus, the defendants had failed to properly

demand a jury trial and had waived their right. *Id.* at 640.

In the instant case, the "last pleading raising an issue of fact" was the original answer submitted by the Wallers.[7] Although the supplemental answer raised new defenses, they were based upon facts set forth in the original complaint and answer. We conclude that Appellants failed to make timely demand for a jury trial in accordance with the Rule.

The judgment of the trial court is therefore affirmed and this cause remanded for any further proceedings necessary and consistent with this opinion. Costs are taxed to Mike Waller and Frieda Waller d/b/a Farmer's Supply and Elevator, for which execution may issue if necessary.

CRAWFORD, J., and McLEMORE, Sp. J., concur.

---

defenses are raised by answer, the matter becomes "an inherently equitable one" and applicable equitable principles will be applied even if the suit is one at law. *Continental Bankers*, 561 S.W.2d at 464.

7. The original answer raised the factual allegations that Mrs. Waller did not execute the guaranty and that the amount paid by Hardeman County Bank for the railroad acreage it purchased was "criminal."