IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
April 8, 2003 Session

# HAREN CONSTRUCTION COMPANY, INC. v. THE METROPOLITAN GOVERNMENT OF NASHVILLE AND DAVIDSON COUNTY

**Appeal from the Chancery Court for Davidson County**
**No. 01-1053-III     Ellen Hobbs Lyle, Chancellor**

---

**No. M2002-01135-COA-R3-CV - Filed July 9, 2003**

---

This appeal involves a contract between the Appellant Haren Construction Company, Inc. (HCCI) and the Appellee Metropolitan Government (Metro). The construction company brought suit claiming Metro breached its contract with HCCI in "constructive suspension" of work. In addition the construction company claimed that Metro interfered with the company's contract for equipment supply from a third party. The trial court granted Metro's two motions for summary judgment, the first concerning Metro's alleged liability under the Governmental Tort Liability Act, the second concerning the action for breach of contract. HCCI appeals the grant of summary judgment. We affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed**

WILLIAM B. CAIN, J., delivered the opinion of the court, in which BEN H. CANTRELL, P.J., M.S., and ROYCE TAYLOR, SP. J., joined.

Philip E. Beck and William L. Barrett, Jr., Atlanta, Georgia, for the appellant, Haren Construction Company, Inc.

Thomas G. Cross and Jennifer C. Surber, Nashville, Tennessee, for the appellee, The Metropolitan Government of Nashville and Davidson County.

## OPINION

On May 28, 1998, Haren Construction Company, Inc. (HCCI) and the Metropolitan Government of Nashville and Davidson County (Metro) executed a contract for the construction of the Bonnafair Sewage Pumping Station. This contract contained the following two paragraphs, which are of particular interest in this appeal:

## 17.  CLAIMS BY THE CONTRACTOR

Claims by the Contractor against the Metropolitan Government are subject to the following terms and conditions:

(F)      In the event the Contractor should be delayed in performing any task which at the time of the delay is then critical, or which during the delay becomes critical, as the sole result of any act or omission of the Metropolitan Government or someone acting in the Metropolitan Government's behalf, or by Metropolitan Government-authorized Change Orders, unusually bad weather not reasonably anticipated, fire or other Acts of God, the date for achieving Substantial Completion, or, as applicable, Final Completion, shall be appropriately adjusted by the Metropolitan Government upon the written claim of the Contractor to the Metropolitan Government and the Architect/Engineer.  A task is critical within the meaning of this Subparagraph 17(F) if, and only if, said task is on the critical path of the Project Schedule so that a delay in performing such task will delay the ultimate completion of the Project.  Any claim for an extension of time by the Contractor shall strictly comply with the requirements of Subparagraph 17(A) above.  If the Contractor fails to make such claim as required in this Subparagraph 17(F), any claim for an extension of time shall be waived. Further, extensions of time shall be Contractor's sole remedy for any and all delays. No payment or compensation of any kind shall be made to Contractor for damages because of hindrance in the orderly progress of the Work or delay from any cause in the progress of the Work, whether such hindrances or delays be avoidable or unavoidable.  Contractor expressly agrees not to make, and hereby waives, any claim for damages on account of any delay, obstruction or hindrance attributable to any cause whatsoever and agrees that Contractor's sole right and remedy in the case of any delay, obstruction or hindrance, shall be an extension of the time fixed for completion of the Contract.

. . .

## 23.  TERMINATION BY THE CONTRACTOR

(A)      The Metropolitan Government shall have the right at any time to direct the Contractor to suspend the performance, or any designated part thereof, for any reason whatsoever, or without reason.   If any such suspension is directed by the Metropolitan Government, the Contractor shall immediately comply with same and shall demobilize as directed by the Metropolitan Government.

(B)      In the event the Metropolitan Government directs a suspension of performance under this Paragraph 23, through no fault of the Contractor, the Metropolitan Government shall pay the Contractor as full compensation for such suspension the Contractor's reasonable costs, actually incurred and paid, of:

-2-

(1)     demobilization and remobilization, including such costs paid to subcontractors,

(2)     preserving and protecting work in place,

(3)     storage of materials or equipment purchased for the Project, including insurance thereon; and,

(4)     performing in a later or during a longer, time frame than that contemplated by this Contract.

In addition to these provisions, the contract also included the following integration clause:

6.      INTENT AND INTERPRETATION

With respect to the intent and interpretation of this Contract, the Metropolitan Government and the Contractor agree as follows:

(A)     This Contract, which includes the documents listed in Paragraph 1 (Documents Incorporated By Reference), constitutes the entire and exclusive agreement between the parties with reference to the Project, and said Contact supersedes any and all prior discussions, communications, representations, understandings, negotiations or agreements.  This Contract also supersedes any bid documents (unless incorporated herein in Paragraph 1);

The original bid, which was incorporated by reference in page 1 of the contract, provided that substantial completion of the construction project was to be achieved within 240 days of the issuance of the Notice to Proceed, and final completion within thirty days after that substantial completion date.  Throughout the time of construction, Metro made several design changes, some with HCCI's approval, some without.  Initial surveys were corrected.  Certain pump motor specifications were changed in a meeting between Metro, the project architect Hart-Freeland-Roberts, Inc. (HFR), and HCCI's major supplier on the project, Southern Sales Company, Inc. (Southern), and in the absence of representatives of HCCI.  As a result, the project which was originally to take 270 days from the Notice to Proceed was finally complete on May 13, 2000, 713 calendar days after inception.  It is undisputed in the record that throughout this period HCCI submitted 18 written applications for payment during and after completion of the Bonnafair Sewage Pump Station in which it stated "contractor waives all claims and the right to make any future claims for additional compensation relating in any way to work performed or delays, hindrances or difficulties experienced to date."

On April 4, 2001, HCCI filed its Complaint for Breach of Contract alleging "constructive suspension" in violation of paragraph 23 of the contract, and seeking damages for that breach.  In addition, HCCI sought damages for Metro's alleged tortious interference with its contractual relationship with Southern.  Metro answered and on January 10, 2002, filed its Motion for Summary

Judgment as to Plaintiffs' claims in their entirety. As grounds therefor, Metro argued that it was immune from suit for inducement to breach and HCCI's claim was essentially a claim for delay damages, barred as a result of the plain language of paragraph 17 of the contract as interpreted pursuant to Tennessee Code Annotated section 47-50-112. That statute provides the appropriate method for interpreting written contracts.

> (a) All contracts, including, but not limited to, notes, security agreements, deeds of trust, and installment sales contracts, in writing and signed by the party to be bound, including endorsements thereon, shall be prima facie evidence that the contract contains the true intention of the parties, and shall be enforced as written; provided, that nothing herein shall limit the right of any party to contest the agreement on the basis it was procured by fraud or limit the right of any party to assert any other rights or defense provided by common law or statutory law in regard to contracts.

Tenn. Code Ann. § 47-50-112(a).

On March 5, 2002, the trial court granted Metro's Motion for Summary Judgment on the claim for interference with contractual rights, taking under advisement the defendant's Motion for Summary Judgment on the "no damages for delay" clause in the contract. On April 9, 2002, the court entered its Memorandum and Order granting the remainder of Metro's Motion for Summary Judgment. From those orders HCCI appeals, arguing first that the trial court erred as a matter of law in determining that paragraph 17 governs the actions of the parties rather than paragraph 23, and that the trial court erred in holding that the claim of inducement to breach is barred by Tennessee Code Annotated section 29-20-205.

I. The Breach of Contract Claim

HCCI claims that Metro, by changing the design requirements, failure to timely provide a construction permit, and otherwise delaying construction, on the project "constructively suspended" work causing damage to HCCI. HCCI argues that the delays thus caused were so lengthy as to be outside the contemplation of the parties. Nonetheless, HCCI finished its performance and was paid its contract price of one million, one hundred thousand, twenty three dollars.

It seeks recovery of what it claims is owed under paragraph 23 if the actions of Metro can be construed as a suspension of work pursuant to that paragraph. In arguing its point HCCI claims that its intent was not expressed in the contract. The company relies upon the general rule posited by the Court in *Real Estate Management, Inc. v. Giles*, 41 Tenn. App. 347, 293 S.W.2d 596 (1956). This case concerned three offers to purchase real estate, which were contingent upon the purchaser's "being able to purchase" three contiguous tracts of real property. The offers were drawn by Real Estate Management, Inc. at the purchaser's behest and were submitted to the three different real estate owners on Real Estate Management, Inc.'s letterhead. In finding that the trial court placed a strained construction upon the contingency, the court stated two general rules regarding the construction of contracts:

Generally, in construing contracts the Courts not only look to the language of the instrument, but must ascertain, if possible, the intention of the parties, and the construction which is fair and reasonable will prevail. *Scott v. McReynolds*, 36 Tenn.App. 289, 255 S.W.2d 401; *Couch v. Couch*, 35 Tenn.App. 464, 248 S.W.2d 327; *Commerce Street Co., Inc. v. Goodyear Tire & Rubber Co., Inc.*, 31 Tenn.App. 314, 215 S.W.2d 4; *Nashville Terminal Co. v. Tennessee Central Ry. Co.*, 2 Tenn.App. 646. And where several instruments are made as part of one transaction, they will be read together and each will be construed with reference to the other. *Great American Indemnity Co. v. Utility contractors, Inc.*, 21 Tenn.App. 463, 111 S.W.2d 901; 17 C.J.S., Contracts, § 298, p. 714.

Applying the foregoing rules of construction to the offer made to Miss Giles, did Freeman, a successful business man, by using the words 'able to purchase,' have reference to his financial ability? Did he intend to unconditionally obligate himself to purchase the Dubrow and Callier tracts at prices he might consider excessive, as insisted on behalf of Miss Giles. Or, on the other hand, is it not reasonably apparent that Freeman, by using the words in question, had reference to his being able to acquire the tracts at prices designated in his offers or at prices acceptable to him. The latter appears to be not only the more logical and reasonable construction, but the undisputed proof shows that such was Freeman's intention prior to and when the offers were signed by him.

*Real Estate Management, Inc. v. Giles*, 41 Tenn.App. at 352-53, 293 S.W.2d at 599.

The agreement between the parties in the case at bar, unlike the offers in *Giles*, consisted of a single unambiguous writing which contained provisions governing suspension of work and delay. This unambiguous writing is accompanied by subsequent memoranda which, rather than create any ambiguity, further support the obvious intent at the time of contract, and reasonable construction of the waiver language in paragraph 17 of the parties' agreement. Simply put, HCCI argues that Metro "constructively suspended" work pursuant to paragraph 23. HCCI argues that the delay it incurred in performance was so severe as to be outside the contemplation of the parties for paragraph 17's purposes, yet within contemplation so as to constitute the suspension of work described in paragraph 23. One of the well settled rules in contract construction is that all the provisions of a contract should be construed in harmony with each other, if such construction can be reasonably made. *See Bank of Commerce and Trust Co. v. Northwestern National Life Ins. Co.*, 160 Tenn. 551, 26 S.W.2d 135, 138, 68 ALR 1380 (1930).

The Supreme Court in *Planters Gin Company v. Federal Compress & Warehouse Company, Inc., et al.*, 78 S.W.3d 885 (Tenn. 2002) held:

[T]he outcome of this case rests on a contractual interpretation of the leasing agreement between Federal Compress and Planters Gin. In "resolving disputes concerning contract interpretation, our task is to ascertain the intention of the parties

based upon the usual, natural, and ordinary meaning of the contractual language." *Guiliano v. Cleo, Inc.*, 995 S.W.2d 88, 95 (Tenn. 1999)  This determination of the intention of the parties is generally treated as a question of law because the words of the contract are definite and undisputed, and in deciding the legal effect of the words, there is no genuine factual issue left for a jury to decide.  5 Joseph M. Perillo, *Corbin on Contracts*, § 24.30 (rev. ed. 1998).  *Doe v. HCA Health Services of Tenn, Inc.*, 46 S.W.3d 191, 196 (Tenn. 2001).

A court's initial task in construing a contract is to determine whether the language of the contract is ambiguous.  Once found to be ambiguous, a court applies established rules of construction to determine the parties' intent.  "Only if ambiguity remains after the court applies the pertinent rules of construction does [the legal meaning of the contract] become a question of fact" appropriate for a jury.  Finding no such ambiguity in the contract between Federal Compress and Planters Gin, the issues presented to this Court are suitable for determination by summary judgment.

*Planters Gin Company*, 78 S.W.3d at 889-90.

Paragraphs 17 and 23 of the contract are neither inconsistent or irreconcilable one with the other.  There is simply no evidence in the record of any "suspension" of performance within the meaning of paragraph 23.  In reconciling these two paragraphs and correctly applying paragraph 17 as controlling in the case, the trial court held:

The premise of the defendant's motion for summary judgment on the breach of contract claim is that the foregoing facts do not entitle the plaintiff to recovery. The defendant argues that the facts constitute a claim of delay and that monetary recovery for delay is barred by a "no damages for delay" provision contained in paragraph 17 of the contract.

In support of its motion, the [defendant] relies upon *Brown Brothers v. Metropolitan Government*, 877 S.W.2d 745 (Tenn. App. 1993) for the proposition that no [damages for delay clauses] are enforceable under Tennessee law.  In enforcing the no damages for delay clause, the court explained in *Brown Brothers* that parties to a contract are "free to allocate risks and burdens between themselves as they see fit."  *Id.* at 749.  "The contract at issue clearly places with the contractor the risk of delay due to utility adjustment, and the burden of coordinating its operations with the affected utilities."  *Id.*  The court alluded to several exceptions to the no damage for delay clause recognized by other courts:  if the delay was of the kind not contemplated by the parties, if the delay amounts to an abandonment of the contact, if the delay was caused by bad faith, or if the delay was caused by active interference.  The court in *Brown* found that the facts of the case fit within none of the exceptions.

The plaintiff's primary opposition to the motion for summary judgment on the breach of contract claim is that paragraph 17, the no damages for delay clause, is

not the applicable contract provision. The plaintiff asserts that the facts of this case and the recovery it seeks come under paragraph 23 of the contract. That contract provision requires the defendant to pay the plaintiff where there has been a suspension of performance.

Paragraph 23 provides that a suspension of the contract occurs when Metro directs the contractor to suspend performance of the contract: "The Metropolitan Government shall have the right at any time to direct the Contractor to suspend the performance . . . ." It is undisputed in this case that Metro never directly or explicitly issued a suspension of performance.

The plaintiff's argument with respect to paragraph 23 is that while Metro may not have declared a suspension, it nevertheless "constructively" suspended the contract by "unreasonably delaying the progress of the contractor's work." This constructive suspension qualifies, the plaintiff argues, as a suspension so as to entitle the plaintiff to relief under paragraph 23 of the contract.

By providing two separate numbered paragraphs – one to deal with delay and one to deal with suspension – the contract differentiates that suspension and delay are different occurrences.

The text of paragraph 23 of the contract indicates that a suspension of work is more than an unreasonable delay. A review of paragraph 23 reveals that suspension occurs when the contractor is taken off the job, work stops, materials are stored and the job site is secured. In the case at bar the summary judgment record is that these acts constituting suspension, constructive or explicit, did not occur. The facts of this case do not trigger the provisions of paragraph 23.

Another indication that paragraph 23 on suspension does not apply is the plaintiff's characterization of its damages. The plaintiff characterizes its damages as "extended overhead" including delayed time, daily contract overhead, and the cost of idle equipment. These are all delay type damages.

The Court therefore concludes that the facts of this case do not state a claim for suspension of the work and that the plaintiff's claim is one to recover for delay. Accordingly, the Court rejects the plaintiff's argument that summary judgment should be denied because the plaintiff's claim comes within the provisions of paragraph 23 of the contract.

This holding by the trial court which is in conformity with *Brown Brothers v. Metropolitan Government*, 877 S.W.2d 745 (Tenn.Ct.App. 1993) is mandated under the undisputed facts of the case. If the result is harsh, it is not the prerogative of the court to intervene on behalf of either party to the contract. "The courts may not make a new contract for parties who have spoken for themselves, *see Petty v. Sloan*, 197 Tenn. 630, 640, 277 S.W.2d 355, 359 (1955), and may not relieve parties of the contractual obligations simply because these obligations later prove to be burdensome or unwise." *See Atkins v. Kirkpatrick*, 823 S.W.2d 547, 553 (Tenn.Ct.App. 1991); *Marshall v. Jackson and Jones Oils, Inc.*, 20 S.W.3d 678, 682 (Tenn.Ct.App. 1999).

II. Inducement to Breach

In addition to its claim for breach of contract, HCCI also alleged that Metro induced Southern to breach its supply agreement with HCCI. In its Complaint, HCCI sought treble damages pursuant to Tennessee Code Annotated section 47-50-109. HCCI argues that the statutory action for inducement to breach sounds in negligence. To the contrary, our Supreme Court has held, that the statutory and common law actions for inducement to breach both require a showing of intent. The actions are identical with the exception of the available remedy. Said the Court:

> Tennessee recognizes both a statutory and common law action for inducement to breach a contract, *see* Tenn.Code Ann. § 47-50-109 (2001); *Polk & Sullivan, Inc. v. United Cities Gas Co.*, 783 S.W.2d 538, 543 (Tenn.1989), and both forms of the action protect "contracts implied in fact, as well as formal, expressed contracts," *Mefford v. City of Dupontonia*, 49 Tenn.App. 349, 355, 354 S.W.2d 823, 826 (1961). Importantly, the elements for both forms of the action are identical, except that a plaintiff asserting a common law action may recover punitive damages, instead of the treble damages mandated by the statute. *See Buddy Lee Attractions, Inc. v. William Morris Agency, Inc.*, 13 S.W.3d 343, 360-61 (Tenn.Ct.App.1999). In order to recover on a theory of inducement to breach a contract, a plaintiff must allege and prove seven elements: (1) that a legal contract existed; (2) that the defendant was aware of the contract; (3) that the defendant intended to induce a breach of that contract; (4) that the defendant acted with malice; (5) that a breach of the contract occurred; (6) that the breach was a proximate result of the defendant's conduct; and (7) that the breach injured the plaintiff. *See Quality Auto Parts Co. v. Bluff City Buick Co.*, 876 S.W.2d 818, 822 (Tenn.1994); *Baker v. Hooper*, 50 S.W.3d 463, 468 (Tenn.Ct.App.2001).

*Givens v. Mullikin*, 75 S.W.3d 383, 405 (Tenn. 2002).

The Governmental Tort Liability Act section concerning public officers and employees enumerates the exceptions to that act's removal of immunity:

> Immunity from suit of all governmental entities is *removed* for injury proximately caused by a negligent act or omission of any employee within the scope of his employment *except* if the injury arises out of:
>
> . . . .
>
> (2) false imprisonment pursuant to a mittimus from a court, false arrest, malicious prosecution, intentional trespass, abuse of process, libel, slander, deceit, *interference with contract rights*, infliction of mental anguish, invasion of right of privacy, or civil rights;

. . . .

Tenn.Code Ann. §29-20-205 (2002)(emphasis added).

Thus under the plain language of the statute, the action for inducement to breach is barred, and the government is immune.

As a result, for the reasons and under the authorities enumerated, the action of the trial court is affirmed in all respects. The cause is remanded for other proceedings as necessary in the trial court; the costs on appeal are assessed against Appellant HCCI.

_____
WILLIAM B. CAIN, JUDGE